CLINTEN LACKMAN, APPELLEE, V. ROGER ROUSSELLE AND
VIRGINIA ROUSSELLE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
APPELLANTS AND CROSS-APPELLEES, AND JACK LACKMAN,
THIRD-PARTY DEFENDANT, APPELLEE AND CROSS-APPELLANT.
596 N.W. 2d 15

Filed June 11, 1999.   No. S-97-489.

P. Shawn McCann, of Sodoro, Daly & Sodoro, for appellants.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellee Clinten Lackman.

Leland K. Kovarik, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellee Jack Lackman.

Maren Lynn Chaloupka and Robert P. Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for amicus curiae Nebraska Association of Trial Attorneys.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

## NATURE OF CASE

The plaintiff, who was riding in a vehicle operated by his father, was injured in a two-vehicle collision. The plaintiff sued the driver of the other vehicle, and the defendant impleaded the plaintiff's father as a third-party defendant. The Nebraska Court of Appeals reversed a jury verdict finding the defendant 90 percent liable and the third-party defendant 10 percent liable, and we granted further review.

## SCOPE OF REVIEW

As to questions of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *Nelson v. City of Omaha*, 256 Neb. 303, 589 N.W.2d 522 (1999).

The Nebraska Supreme Court will not consider errors which are not properly assigned in a petition for further review

and discussed in the supporting memorandum brief. *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999).

In the absence of plain error, where an issue is raised for the first time in a higher appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998). A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Id.*

## FACTS

A more detailed statement of facts is set forth in *Lackman v. Rousselle*, 7 Neb. App. 698, 585 N.W.2d 469 (1998). In summary, Clinten Lackman was a passenger in a vehicle driven by his father, Jack Lackman, when Jack's vehicle collided with a vehicle owned and driven by Roger Rousselle. The vehicles collided at low rates of speed after approaching each other on a flat field road located on property partially owned by Jack. Clinten was injured in the collision, and he brought suit against Roger, as well as Roger's wife, Virginia Rousselle. Although Virginia was not in the vehicle at the time of the collision, Clinten alleged that she was involved with Roger in the joint enterprise of family farming and that the vehicle was owned jointly and was being used in furtherance of that enterprise at the time of the collision. Clinten did not sue his father, Jack.

Roger responded, alleging that the collision was a result of Jack's deliberate attempt to force Roger's vehicle off the road. Roger alleged that Jack's negligence was the sole proximate

cause of the collision and that such negligence should be imputed to Clinten on the theories that Clinten entered Jack's vehicle aware of the plan to force Roger off the road and that Clinten was involved in the joint enterprise of farming with Jack. Roger also alleged that Clinten had voluntarily assumed the risk of his injuries. Virginia's answer reiterated the allegations made by Roger and also demurred to Clinten's petition for the reason that there were no facts alleged which would support a claim against her pursuant to the family purpose doctrine or the theory of joint enterprise.

Subsequently, Roger obtained leave to join Jack as a third-party defendant. Roger filed a third-party complaint against Jack, seeking compensation for damage to his vehicle. Roger also prayed for judgment for all or a portion of any damages that might be awarded against him in Clinten's action. Jack's answer to Roger's third-party complaint denied the allegations against him and alleged that the complaint failed to state a cause of action.

The trial court overruled Jack's motion for summary judgment, which alleged that under the guest statute, Neb. Rev. Stat. § 25-21,237 (Reissue 1995) (codified at the time of the accident at Neb. Rev. Stat. § 39-6,191 (Reissue 1988)), he could not be held liable for any damages to Clinten. The court explained that because Clinten's presence was of benefit to Jack in their farming operation, the guest statute did not apply.

The court also overruled Roger's motion for partial summary judgment, concluding that the facts clearly showed that Jack's negligence could not be imputed to Clinten under a joint enterprise theory and concluding that the evidence was disputed as to whether Roger's negligence could be imputed to Virginia under the same theory.

Subsequently, the trial court overruled Jack's and Clinten's motions for directed verdict and overruled Roger's motion for directed verdict except to the extent the court concluded that the evidence was deficient to show any loss of past wages. The jury returned a verdict in favor of Clinten and against both Roger and Virginia in the amount of $175,000. Under the court's instructions, the jury assessed the percentage of negligence of the parties as follows: 0 percent for Clinten; 90 percent for Roger; and

10 percent for Jack. Using the jury's findings, the trial judge entered judgment against Roger and Virginia in the amount of $175,000, plus taxable court costs, and against Jack in the amount of $17,500, plus 10 percent of the taxable court costs. Motions for new trial were filed and overruled. Roger and Virginia appealed to the Court of Appeals, and Jack cross-appealed.

Roger and Virginia asserted to the Court of Appeals that the trial court erred (1) in failing to instruct the jury on the general standard of care by which Clinten's conduct was to be judged; (2) in failing to instruct the jury to make a separate finding for the amount of economic and noneconomic damages; (3) in giving an instruction as to future loss of earning capacity where the evidence was insufficient; (4) in admitting without proper foundation hearsay evidence of a motor vehicle investigation traffic report containing inadmissible and prejudicial opinions; (5) in submitting to the jury the question of imputing the claimed negligence of Roger to Virginia under the joint enterprise doctrine or, alternatively, in failing to submit the issue of imputing Jack's negligence to Clinten under the same doctrine; and (6) in failing to grant their motions for directed verdict, judgment notwithstanding the verdict, and new trial.

Jack's cross-appeal asserted that the trial court erred (1) in concluding that Roger and Virginia were entitled to contribution, (2) in concluding that Roger and Virginia were entitled to relief based on apportionment of fault, and (3) in failing to determine that Roger and Virginia were barred from recovering any sum against Jack for the reason that Roger's negligence was greater than the total negligence of all persons against whom recovery was sought.

The Court of Appeals reversed the judgment and remanded the cause for a new trial. The Court of Appeals determined that the trial court should have granted a directed verdict in favor of Virginia, because there was inadequate proof of a joint enterprise. The Court of Appeals further held that under Neb. Rev. Stat. § 25-21,185.10 (Reissue 1995), it was plain error for the trial court to fail to instruct the jury to make separate findings for economic and noneconomic damages. In reliance on § 25-21,185.10, the Court of Appeals also found that the trial

court erred in failing to enter separate judgments against Roger and Jack which were limited to their proportional allocation of the noneconomic damages. The Court of Appeals found no merit to Jack's cross-appeal. We granted Clinten's and Jack's petitions for further review. We now affirm the judgment of the Court of Appeals.

## ASSIGNMENTS OF ERROR

Clinten's petition for further review asserts that the Court of Appeals erred (1) in reversing the jury verdict by determining that the trial court failed to properly instruct the jury, (2) in determining that a common liability existed between Jack and Roger to Clinten, (3) in determining that there can be contribution between Jack and Roger, (4) in treating Jack and Roger as codefendants, (5) in determining that the failure to instruct the jury to separately determine economic and noneconomic damages required a new trial, and (6) in determining that the trial court should have granted the requested directed verdict in favor of Virginia for lack of proof as to a joint enterprise.

Jack's petition for further review asserts that the Court of Appeals erred (1) in reversing the jury verdict for failure to properly instruct, (2) in determining that a common liability existed to Clinten, (3) in determining that there should be contribution between Roger and Jack, (4) in determining that the trial court erred in failing to instruct the jury about the effect of the allocation of negligence between Roger and Jack, (5) in treating and regarding Roger and Jack as codefendants, (6) by holding that a new trial was required as a result of the trial court's failure to instruct the jury to separately determine economic and noneconomic damages, (7) in failing to find that Roger was barred by his own contributory negligence from recovering any sum against Jack, (8) in failing to find that the comparative negligence as between Roger and Jack applied independently of the negligence between Clinten and Roger, (9) in disregarding and failing to apply Nebraska's established rules and procedures involving third-party practice and failing to apply the provisions of Neb. Rev. Stat. § 25-331 (Reissue 1995), and (10) in holding that Roger was empowered through third-party practice to force all possible joint tort-feasors to be joined

and was empowered to enforce contribution among all possible joint tort-feasors, even though Clinten had elected not to join or make claim against a possible joint tort-feasor.

## ANALYSIS

The Nebraska Supreme Court will not consider errors not properly assigned in a petition for further review and discussed in the supporting memorandum brief. *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999). In the absence of plain error, where an issue is raised for the first time in a higher appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

Although Clinten and Jack make several assignments of error, those errors properly preserved, assigned, and argued in their memorandum briefs can be summarized into three: (1) Clinten and Jack assert that the Court of Appeals erred in finding reversible error in the trial court's failure to advise the jury to separately determine the amount of Clinten's economic and noneconomic damages, (2) Clinten and Jack assert that the Court of Appeals erred in finding reversible error in the trial court's failure to enter separate judgments against Roger and Jack proportionate to their fault, and (3) Clinten asserts that the Court of Appeals erred in directing the trial court to dismiss the action against Virginia.

### APPLICATION OF § 25-21,185.10

The first two assignments of error relate to the Court of Appeals' application of § 25-21,185.10, which states:

> In an action involving more than one defendant when two or more defendants as part of a common enterprise or plan act in concert and cause harm, the liability of each such defendant for economic and noneconomic damages shall be joint and several.
>
> In any other action involving more than one defendant, the liability of each defendant for economic damages shall be joint and several and the liability of each defendant for noneconomic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount

of noneconomic damages allocated to that defendant in direct proportion to that defendant's percentage of negligence, and a separate judgment shall be rendered against that defendant for that amount.

There was no evidence that Roger and Jack acted as part of a common enterprise or plan. Thus, the Court of Appeals applied the second half of § 25-21,185.10 and correctly concluded that it was plain error for the trial court not to instruct the jury separately regarding economic and noneconomic damages. The Court of Appeals held that under § 25-21,185.10, it was error for the trial court to enter judgment against Roger for more than his proportionate share.

■ Under Nebraska common law, an act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally. *Gergen v. The Western Union Life Ins. Co.*, 149 Neb. 203, 30 N.W.2d 558 (1948). See, also, *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994) (where two causes produce single indivisible injury, joint and several liability attaches). Under such joint and several liability, either tort-feasor may be held liable for the entire damage, and a plaintiff need not join all tort-feasors as defendants in an action for damages. See, *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997); *Mazankowski v. Harders*, 206 Neb. 583, 293 N.W.2d 869 (1980). Where the joint tort-feasors do not act as part of a common enterprise or plan, § 25-21,185.10 alters the common law by limiting a plaintiff's recovery of noneconomic damages from any one tort-feasor to that tort-feasor's proportionate liability in an "action involving more than one defendant." See § 25-21,185.10.

Clinten and Jack assert that § 25-21,185.10 should be narrowly construed so as to apply only where there is more than one person deliberately brought into the lawsuit by the plaintiff. In other words, that the term "defendant," as used in § 25-21,185.10, does not encompass third-party defendants such as Jack. Therefore, they argue that the case should be governed by common law and not by § 25-21,185.10.

This argument overlooks Neb. Rev. Stat. § 25-323 (Reissue 1995), which provides:

> Any person whose negligence was or may have been a proximate cause of an accident or occurrence alleged by the plaintiff, other than parties who have been released by the plaintiff and are not subject to suit pursuant to section 25-21,185.11, may be brought into the suit by any defendant in the manner provided in section 25-331 . . . .

Section 25-331, which governs third-party practice, provides in part that "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."

Statutes which effect a change in common law or take away a common-law right should be strictly construed, and a construction which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it. *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998). Other courts have held that the term "defendant" plainly includes third-party defendants. For instance, in *UMC, Inc. v. Arthur Bros., Inc.*, 626 S.W.2d 819 (Tex. App. 1981), the court held that the phrase "named defendants in the primary suit," which appeared in a statute governing venue relating to claims for contribution among joint tort-feasors, encompassed third-party defendants. Likewise, in *Kappish v. Lotsey*, 76 N.J. Super. 215, 184 A.2d 17 (1962), the court held that third-party defendants were "defendants" within the purview of the state's joint tort-feasors contribution law, which provided that service may be had on defendants in other counties where one or more defendants are served within the county in which the action is brought. See, also, *Ruddi v. Concrete Steel Co.*, 183 Misc. 1004, 54 N.Y.S.2d 790 (1944) (statute entitling "the defendant" to costs included third-party defendant). We conclude that under the plain language of § 25-21,185.10, the term "defendant" includes a third-party defendant brought into an action pursuant to § 25-331.

Clinten argues that even if the term "defendant" includes a third-party defendant, § 25-21,185.10 is inapplicable here because Jack is immune from liability under the guest statute, § 25-21,237. Similarly, Clinten argues that because he has chosen not to assert a claim against Jack, § 25-21,185.10 cannot

apply so as to limit Clinten's recovery against Roger to a proportionate share of noneconomic damages. Clinten asserts that § 25-21,185.10 can limit judgment against each defendant to that defendant's proportionate share of noneconomic damages only when an actual judgment can be granted against each defendant. We disagree.

We conclude that the Court of Appeals correctly determined the method of apportioning damages between joint tort-feasors for purposes of § 25-21,185.10. Clinten's ability to recover from Jack does not affect the application of § 25-21,185.10. The action remains an "action involving more than one defendant." The jury must be instructed to assess economic and noneconomic damages separately.

The question may arise on retrial whether Clinten, not having asserted a claim against Jack, can recover anything from Jack. Jack has been made a third-party defendant by Roger for purposes of contribution as to economic damages and for purposes of apportionment as to noneconomic damages. We conclude that unless Clinten asserts a claim directly against Jack, a named and identifiable third-party defendant, as permitted by § 25-331, no judgment could be entered against Jack in favor of Clinten. Thus, there is a limited distinction between a defendant and a third-party defendant in the context of the facts of this case.

Assuming Clinten asserts no claim against Jack, on retrial, if Jack and Roger are found to be jointly and severally liable, then, as to economic damages, a judgment must be entered in favor of Clinten and against Roger for the entire amount of such damages. A judgment would then be entered in favor of Roger and against Jack for contribution. As to noneconomic damages, a judgment would be entered in favor of Clinten and against Roger for the amount of such damages which is equal to Roger's proportionate share of liability. No recovery would be had by Clinten against Jack for either economic or noneconomic damages.

## VIRGINIA ROUSSELLE

We next address whether the Court of Appeals erred in determining that a directed verdict should have been granted in favor of Virginia. Virginia was not involved in the collision, but

Clinten brought her into the action on the theory that Roger's negligence should be imputed to her under the joint enterprise doctrine.

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998). A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Id.*

To establish a joint venture or enterprise, the burden is on the plaintiff to show its existence by clear and convincing evidence. See *Evertson v. Cannon*, 226 Neb. 370, 411 N.W.2d 612 (1987). A joint venture or enterprise is in the nature of a partnership and exists when two or more persons contribute cash, labor, or property to a common fund with the intention of entering into some business or transaction for the purpose of making a profit to be shared in proportion to the respective contributions. *Carey v. Humphries*, 171 Neb. 578, 107 N.W.2d 20 (1961). Each of the parties must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other. *Dunn v. Hemberger*, 230 Neb. 171, 430 N.W.2d 516 (1988).

The relationship of joint venturers depends largely upon the intent of the alleged parties as manifested from the facts and circumstances involved in each particular case. *Id.*; *Evertson v. Cannon, supra.* A joint venture can exist only by voluntary agreement of the parties and cannot arise by operation of law. *Global Credit Servs. v. AMISUB*, 244 Neb. 681, 508 N.W.2d 836 (1993); *Evertson v. Cannon, supra.* Even a close relationship between two parties does not create an implied joint venture. *Global Credit Servs. v. AMISUB, supra.* In considering whether a joint venture exists, the acts and circumstances

between spouses may not have the same significance as the same acts and circumstances between strangers might have. 46 Am. Jur. 2d *Joint Ventures* § 58 (1994).

The evidence presented at trial showed that Roger farmed a piece of land owned by Virginia's mother, as well as land he jointly owned with Virginia. Virginia testified that Roger was responsible for the day-to-day farming activities on their land, as well as her mother's land. Virginia's primary responsibilities were to care for the family home and the children. She denied participating in or being specifically aware of the actual farming activities.

In arguing that there is evidence of a joint venture, Clinten points out that Virginia performed recordkeeping for the family and wrote checks to pay the bills. Clinten also notes Virginia's testimony that she has helped care for the cattle on rare occasions and has assisted Roger in irrigating by opening a headgate on a couple of occasions and in hanging tubing on one occasion. The vehicle driven by Roger at the time of the collision was titled in both Roger's and Virginia's names, as was the other farm machinery. Finally, Clinten points to the fact that farming is the primary source of income for the family, and Roger and Virginia file joint income tax returns which specify the farming operation as a business activity.

We agree with the Court of Appeals that as a matter of law, the evidence was insufficient to show a joint enterprise in farming. Rather, the evidence shows only the naturally shared interests of a husband and wife working together to raise their family. There is no evidence of an intent to enter into an agreement for a joint enterprise. Nor is there sufficient evidence of Virginia's control over the farming operation. See *Farm Bureau Service Co. of Hardin Cty. v. Bavender*, 217 N.W.2d 560 (Iowa 1974) (where court was unwilling to impute joint venture to activities associated with being farm housewife).

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals, which reversed the judgment and remanded the cause for a new trial.

AFFIRMED.

MILLER-LERMAN, J., not participating.