TILT-UP CONCRETE, INC., A NEBRASKA CORPORATION,
APPELLANT, V. STAR CITY/FEDERAL, INC.,
A SOUTH DAKOTA CORPORATION, APPELLEE.

621 N.W.2d 502

Filed January 19, 2001. No. S-99-799.

Edward H. Tricker, Kerry L. Kester, and Craig C. Dirrim, of Woods & Aitken, L.L.P., for appellant.

Robert T. Grimit and Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1994, Tilt-Up Concrete, Inc. (Tilt-Up), filed a petition in the district court against Star City/Federal, Inc. (Star City), seeking foreclosure of a construction lien. The facts of the underlying dispute are set out more fully in this court's decision in that matter. See *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998) (*Tilt-Up I*). The district court in *Tilt-Up I* determined that Tilt-Up had a valid construction lien in the amount of $852,243.70 and entered judgment accordingly. On appeal, we held that when a prime contractor has not substantially performed a contract, the contractor is entitled to a construction lien only for the reasonable value of the labor performed and the materials furnished; consequently, this court reduced the amount of Tilt-Up's lien to $235,418. *Id.*

In October 1998, Tilt-Up filed another petition in the district court, seeking a deficiency judgment and damages for breach of an oral contract. Star City demurred on the ground that the action was barred by the 4-year statute of limitations for oral contracts. See Neb. Rev. Stat. § 25-206 (Reissue 1995). The dis-

trict court sustained the demurrer, and Tilt-Up filed an amended petition. Star City again demurred, and the district court again sustained the demurrer. Tilt-Up elected to stand on its amended petition, the district court dismissed the action, and Tilt-Up appeals.

## STANDARD OF REVIEW

■ In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 618 N.W.2d 827 (2000); *Wilkinson v. Methodist, Richard Young Hosp.*, 259 Neb. 745, 612 N.W.2d 213 (2000).

■ In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000); *Armour v. L.H.*, 259 Neb. 138, 608 N.W.2d 599 (2000).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Hollandsworth v. Nebraska Partners*, 260 Neb. 756, 619 N.W.2d 579 (2000); *Gage Cty. Bd. v. Nebraska Tax Equal. & Rev. Comm.*, 260 Neb. 750, 619 N.W.2d 451 (2000).

## ASSIGNMENTS OF ERROR

Tilt-Up assigns, as consolidated and restated, that the district court erred in determining that (1) Tilt-Up was not barred from bringing a breach of contract action by the supersedeas bond in *Tilt-Up I*, (2) Tilt-Up was not barred from bringing a breach of contract action by Neb. Rev. Stat. § 25-2140 (Reissue 1995), (3) Tilt-Up did not state a cause of action under Neb. Rev. Stat. § 52-157 (Reissue 1998), and (4) Tilt-Up's action was barred by the doctrine of election of remedies.

## ANALYSIS

We initially note that Tilt-Up's appellate arguments are exclusively directed at its theory of recovery for breach of contract and do not address its claim for a deficiency judgment. The district court determined that Tilt-Up obtained only a construction lien in *Tilt-Up I* and did not obtain a judgment for the full amount of its contract damages. Tilt-Up's appellate assignments of error do not challenge this determination. Accordingly, Tilt-Up's deficiency judgment claim is not at issue. See, *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000); *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999) (error must be assigned and argued to be considered by appellate court).

Pursuant to § 25-206, Tilt-Up had 4 years from the breach of its contract with Star City to bring its action on the oral contract. Tilt-Up's amended petition alleges that its contract with Star City was breached on January 20, 1994. Tilt-Up's first petition for breach of contract was filed on October 16, 1998. Consequently, the bar of the statute of limitations is apparent on the face of the petition.

■ A petition which makes apparent on its face that the cause of action it asserts is ostensibly barred by the statute of limitations fails to state a cause of action and is demurrable unless the petition alleges some excuse which tolls the operation and bar of the statute. *Ohio Nat. Life Ins. Co. v. Rust*, 255 Neb. 372, 585 N.W.2d 438 (1998); *Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648 (1995). Therefore, the primary question presented in this case is whether Tilt-Up's amended petition effectively alleges an excuse which tolls the operation and bar of the statute. See *id.*

The argument advanced by Tilt-Up is that the statute of limitations was equitably tolled during the pendency of its construction lien foreclosure action because Tilt-Up was barred during that time from bringing a breach of contract action. Tilt-Up advances several theories as to why it was barred from bringing a breach of contract action. Assuming arguendo that the statute of limitations would have been tolled had Tilt-Up actually been barred from bringing its breach of contract action, we proceed to consider each of Tilt-Up's theories as to why its breach of contract action may have been precluded.

### Effect of Nebraska Construction Lien Act

Tilt-Up's construction lien was brought under the Nebraska Construction Lien Act (NCLA), Neb. Rev. Stat. §§ 52-125 through 52-159 (Reissue 1998). See *Tilt-Up I*. The first issue we address is whether the NCLA precludes a construction lienholder from also pursuing an action for breach of contract.

■ The general rule is long established that "in the absence of some provision to the contrary . . . the remedy upon a mechanic's lien and the remedy upon the debt are distinct and concurrent, and may be pursued at the same time or in succession." *Hatcher v. Hendrie & Bolthoff Mfg. & Supply Co.*, 133 F. 267, 271 (8th Cir. 1904). See, generally, 53 Am. Jur. 2d *Mechanics' Liens* §§ 338 and 339 (1996). See, also, e.g., *Great Western Sav. v. George W. Easley*, 778 P.2d 569 (Alaska 1989); *Pine Gravel, Inc. v. Cianchette d/b/a Site Prep.*, 128 N.H. 460, 514 A.2d 1282 (1986); *Sentry Engineering v. Mariner's Cay Dev. Corp.*, 287 S.C. 346, 338 S.E.2d 631 (1985); *Meier v. Novak*, 338 N.W.2d 631 (N.D. 1983); *Lane-Tahoe, Inc. v. Kindred Constr. Co.*, 91 Nev. 385, 536 P.2d 491 (1975), *disapproved on other grounds, County of Clark v. Blanchard Constr. Co.*, 98 Nev. 488, 653 P.2d 1217 (1982); *McHugh Elec. Co. vs. Hessler Rlty. & Dev. Co.*, 50 Del. 296, 129 A.2d 654 (1957); *W. Va. Engin. Corp. v. Kurish*, 137 W. Va. 856, 74 S.E.2d 596 (1953); *Herro v. Heating & Plumbing F. Corp.*, 206 Wis. 256, 239 N.W. 413 (1931); *Southern Sur. Co. v. York Tire Service*, 209 Iowa 104, 227 N.W. 606 (1929); *Alberti v. Moore et al.*, 20 Okla. 78, 93 P. 543 (1908); *Groesbeck v. Linden*, 321 N.J. Super. 349, 729 A.2d 47 (1999); *Old Kent v Whitaker Constr Co*, 222 Mich. App. 436, 566 N.W.2d 1 (1997), *appeal denied* 457 Mich. 858, 581 N.W.2d 729 (1998); *Brook-Hattan Utilities v. 893 Const.*, 180 A.D.2d 660, 579 N.Y.S.2d 705 (1992); *Jaric, Inc. v. Chakroff*, 63 Ohio App. 3d 506, 579 N.E.2d 493 (1989); *Kenko, Inc. v. Lowry Hill Const. Co.*, 392 N.W.2d 18 (Minn. App. 1986); *St. Regis Paper Co. v. Quality Pipeline*, 469 So. 2d 820 (Fla. App. 1985), *review denied* 479 So. 2d 118; *Tighe v. Kenyon*, 681 P.2d 547 (Colo. App. 1984); *Costanzo v. Stewart*, 9 Ariz. App. 430, 453 P.2d 526 (1969); *Culbertson v. Cizek*, 225 Cal. App. 2d 451, 37 Cal. Rptr. 548 (1964); *Rockwood Sprinkler*

*Co. v. Phillips Co.*, 265 Ill. App. 267 (1932). But see *Drywall Interior Systems v. Ladue Bldg.*, 857 S.W.2d 523 (Mo. App. 1993).

█ This rule is consistent with the well-known principle that a statutory construction which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it. See, *Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999); *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998). The NCLA contains neither an express provision nor any language indicating that the NCLA was meant to preclude other remedies that a construction lien-holder might pursue to collect a contractual debt. We therefore conclude that the NCLA does not take away a construction lien-holder's common-law right to sue for breach of contract.

Because the NCLA does not preclude an action for breach of contract, Tilt-Up was entitled to bring such an action despite the pendency of its construction lien foreclosure action. The only limitation is that any amount recovered for breach of contract damages would be credited to satisfy the construction lien when necessary to prevent a double recovery. See, *Culbertson v. Cizek, supra* (money collected on personal judgment to be credited to mechanic's lien); § 52-136(1) (amount of lien is for *unpaid* part of contract price). Compare *Tilt-Up I* (payments previously made by Star City to Tilt-Up credited to lien).

Tilt-Up argues that it was nonetheless barred from bringing a breach of contract action because it had obtained a judgment from the district court in the construction lien foreclosure action which included breach of contract damages and could not seek further damages for breach of contract until after this court's modification of the construction lien judgment. This argument is without merit. Tilt-Up was entitled to pursue damages in a breach of contract action; any judgment from the breach of contract action, if recovered, would simply have been credited to the lien. See, e.g., *Hafeman v. Gem Oil Co.*, 163 Neb. 438, 80 N.W.2d 139 (1956) (multiple judgments may be had, but only one satisfaction). Since Tilt-Up was not barred from bringing its breach of contract action by the NCLA, the statute of limitations for breach of contract was not tolled on that basis.

SUPERSEDEAS BOND

■ Tilt-Up next argues that it was precluded from bringing its breach of contract action by a supersedeas bond filed by Star City pending the disposition of Star City's appeal in *Tilt-Up I.* Tilt-Up alleges in its amended petition that the supersedeas bond "secured the full amount of the lien and breach of contract damages awarded by the District Court." The bond, a copy of which was attached to the amended petition, required Star City to prosecute its appeal without delay and pay all money and costs which may be found against it on the final determination of the cause. A demurrer reaches an exhibit filed with the petition and made a part thereof, so that a court can consider such exhibit in determining whether the petition states a cause of action. *Horton v. Ford Life Ins. Co.*, 246 Neb. 171, 518 N.W.2d 88 (1994).

■ A supersedeas bond, however, serves only to suspend further proceedings on the judgment or decree appealed from. *Kleeb v. Kleeb*, 213 Neb. 537, 330 N.W.2d 484 (1983). Manifestly, a supersedeas bond furnished in one cause will not operate to suspend or prevent the enforcement of a judgment or decree rendered in another and different action. *State v. Ramsey*, 50 Neb. 166, 69 N.W. 758 (1897). Thus, the supersedeas bond filed by Star City in *Tilt-Up I* served only to suspend further proceedings in the district court on the judgment of construction lien foreclosure and did not stay Tilt-Up from taking such other measures as were available to secure its right to damages for breach of contract.

Furthermore, the statute providing for a supersedeas bond where, as here, the decree orders the sale of real estate, Neb. Rev. Stat. § 25-1916(3) (Reissue 1995), states:

> When the judgment, decree, or order directs the sale or delivery of possession of real estate, the bond, deposit of United States Government bonds, or cash deposit shall be in such sum as the court, or judge thereof in vacation, shall prescribe, conditioned that the appellant or appellants will prosecute such appeal without delay, will not during the pendency of such appeal commit or suffer to be committed any waste upon such real estate, and will pay all costs and all rents or damages to such real estate which may accrue during the pendency of such appeal and until the appellee is legally restored thereto . . . .

These conditions would not have been violated by Tilt-Up pursuing a breach of contract action. Tilt-Up was merely precluded from seeking to enforce the judgment it had already obtained, not from seeking another judgment under a collateral theory of recovery. Consequently, the supersedeas bond did not act to toll the running of the statute of limitations on Tilt-Up's breach of contract action. This assignment of error is without merit.

## Mortgage Foreclosure Statutes

Tilt-Up also argues that it was precluded from bringing its breach of contract claim during *Tilt-Up I* by § 25-2140, which provides: "After [a mortgage foreclosure] petition shall be filed, while the same is pending, and after a decree is rendered thereon, no proceedings whatever shall be had at law for the recovery of the debt secured by the mortgage, or any part thereof, unless authorized by the court."

Tilt-Up claims that its action in *Tilt-Up I* was necessarily brought under the mortgage foreclosure statutes, Neb. Rev. Stat. §§ 25-2137 through 25-2155 (Reissue 1995), such that § 25-2140 would bar it from seeking a concurrent remedy for Star City's contractual debt. Tilt-Up relies upon § 52-155(3), which provides, in relevant part, that "[f]oreclosure [of a construction lien] may be by any method available for foreclosure of security interests in real estate, or otherwise, as ordered by the court." Tilt-Up argues that since the mortgage foreclosure statutes are the only method provided by the Nebraska statutes for foreclosure of security interests in real estate, the mortgage foreclosure statutes are necessarily applied to foreclosure of construction liens.

Tilt-Up's argument, however, is contrary to the plain language of § 52-155. That section quite specifically *does not* limit the district court to the mortgage foreclosure statutes, but instead provides that the district court may utilize *any method* available for foreclosure, including but not limited to the mortgage foreclosure statutes. Particularly enlightening in this regard are the comments to article 5 of the Uniform Simplification of Land Transfers Act, upon which the NCLA was based. Compare § 52-155 with Unif. Simplification of Land Transfers Act § 5-401 (1976), 14 U.L.A. 360 (1990). Comment 1 to § 5-401 states:

> This Act does not specify the method of foreclosure to be used in foreclosing construction liens. The court may use the method of foreclosure applicable to security interest (mortgage) foreclosure in the state, or the procedure applicable to realization on judgments, or other available procedure. It is specifically intended that private sale foreclosure be available if it would be available in a judicial foreclosure of a security interest.

■ We have stated that the object of a mechanic's lien being to secure the claims of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions. *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. 806, 566 N.W.2d 115 (1997). Tilt-Up's interpretation of § 52-155 would place a limitation upon the ability of the district court to give effect to the provisions of the NCLA and, thus, runs contrary to our established principle regarding interpretation of the NCLA.

■ Moreover, Tilt-Up is incorrect in asserting that for these purposes, a construction lien is equivalent to a mortgage. This court has distinguished a mortgage from a lien, concluding that a lien is more comprehensive than a mortgage and that " '[e]very lien is not a mortgage.' " See *Dupuy v. Western State Bank*, 221 Neb. 230, 233, 375 N.W.2d 909, 912 (1985). A mortgage has been defined as a contract by which specific real property capable of being transferred is hypothecated for the performance of an act without requiring a change in possession and includes a transfer of an interest in real property made only to secure the performance of an act. See *Wagner v. Wagner*, 612 N.W.2d 555 (N.D. 2000). A mortgage is created by the voluntary act of the parties, whereas the typical lien is created and attaches to the specific property by action of law and regardless of the consent of the parties. *In Re Najarian*, 44 R.I. 499, 119 A. 498 (1923). See, also, *Dupuy v. Western State Bank, supra*; Black's Law Dictionary 1026 (7th ed. 1999) (defining "mortgage" as "lien against property that is *granted* to secure an obligation").

■ Finally, we note that although Tilt-Up alleges that it filed its foreclosure petition in *Tilt-Up·I* pursuant to the mortgage

foreclosure statutes, none of its pleadings or filings in *Tilt-Up I* reference these statutes; nor, indeed, is there any reference to these statutes in the entire transcript from *Tilt-Up I*. While a demurrer otherwise goes only to those defects in pleading which appear on the face of the petition and those documents attached to and made a part of it, in ruling on a demurrer, a court may take judicial notice of its own record in an interwoven and interdependent action it previously adjudicated. See *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994).

In short, we conclude that a construction lien is not equivalent to a mortgage for purposes of applying § 25-2140. Tilt-Up was not precluded by § 25-2140 from bringing a breach of contract action during the pendency of *Tilt-Up I*, the statute of limitations on its breach of contract claim was not tolled by § 25-2140, and its assignment of error is without merit.

REMEDY FOR WRONGFUL CONDUCT

Tilt-Up asserts that regardless of the fate of its breach of contract claim, its amended petition stated a cause of action pursuant to § 52-157(1), which provides:

If a person is wrongfully deprived of benefits to which he or she is entitled under sections 52-125 to 52-159 by conduct other than that described in section 52-156:

(a) He or she is entitled to damages; and

(b) The court may make orders restraining the owner or other person, or ordering them to proceed on appropriate terms and conditions.

Tilt-Up's assignment of error is clearly without merit, as it has not been wrongfully deprived of benefits to which it was entitled under the NCLA. This court determined in *Tilt-Up I* that Tilt-Up was entitled, under the NCLA, to a construction lien in the amount of $235,418. Tilt-Up's amended petition alleges that Star City satisfied this construction lien on September 9, 1998, by payment to the clerk of the district court in the amount of the lien, interest, and costs, totaling $272,753.91. Consequently, Tilt-Up received all of the benefits to which this court determined it was entitled under the NCLA, and the amended petition does not state a cause of action pursuant to § 52-157. Tilt-Up's assignment of error is without merit.

## ELECTION OF REMEDIES

Tilt-Up finally claims that the district court erred to the extent that it sustained Star City's demurrer based on the doctrine of the election of remedies. Based on our analysis of the NCLA above, this assignment of error might have had merit, had the district court actually relied upon the election of remedies. The district court determined, however, and we agree, that foreclosure of a construction lien and an action for breach of contract are not inconsistent remedies. Thus, the district court did not err, as it did not rely on the doctrine of election of remedies.

In any event, this issue is irrelevant to our disposition of the appeal, as we have already determined that Star City's demurrer was properly sustained on the basis of the statute of limitations and for failure to state a cause of action pursuant to § 52-157. An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Drake v. Drake*, 260 Neb. 530, 618 N.W.2d 650 (2000); *Prokop v. Hoch*, 258 Neb. 1009, 607 N.W.2d 535 (2000). An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *White v. Board of Regents*, 260 Neb. 26, 614 N.W.2d 330 (2000); *Gagne v. Severa*, 259 Neb. 884, 612 N.W.2d 500 (2000).

## CONCLUSION

Tilt-Up's amended petition failed to state a cause of action, as it failed to allege facts sufficient to overcome the bar of the statute of limitations, or to establish a wrongful deprivation of benefits under § 52-157. Star City's demurrer was properly sustained; the district court did not err in dismissing Tilt-Up's amended petition. The judgment of the district court is therefore affirmed.

AFFIRMED.