742 N.W.2d 782 (2007)
16 Neb. App. 228
PRESTON REFRIGERATION CO., INC., Appellee,
v.
OMAHA COLD STORAGE TERMINALS, INC., Appellant.
No. A-07-472.
Court of Appeals of Nebraska.
December 4, 2007.
*784 Alan J. Mackiewicz, Omaha, for appellant.
Andrew M. DeMarea and Jay E. Heidrick, Overland Park, KS, of Shughart, Thomson & Kilroy, P.C., and Steven J. Reisdorff, Lincoln, for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
SIEVERS, Judge.
This appeal presents the question of whether a lawsuit which seeks foreclosure on a construction lien can also include a separate cause of action for additional damages for breach of contract. Pursuant to the authority granted this court under Neb. Ct. R. of Prac. 11B(1) (rev.2006), this case has been ordered submitted for decision without oral argument.

FACTUAL BACKGROUND
Given the narrow issues raised by the assignments of error, our factual recitation is limited. The appellee, Preston Refrigeration Co., Inc. (Preston), is a refrigeration contractor located in Kansas City, Kansas, and the appellant, Omaha Cold Storage Terminals, Inc. (Cold Storage), is a Nebraska corporation doing business in Omaha, Nebraska, and other states. Cold Storage owned real estate in rural Saline County, Nebraska, upon which it intended to construct a cold processing storage facility known as the Crete Project. In October *785 2001, Cold Storage arranged for Preston to produce an electrical design for the Crete Project at a cost of $30,000. In late November 2001, Preston agreed to perform work on eight screw compressors to be used at the Crete Project at a cost of $156,565 and a written contract for such work in such amount was entered into between Preston and Cold Storage. On January 20, 2002, Preston and Cold Storage entered into a contract whereby Preston would perform all work related to the design and construction of the cooling system at the Crete Project, which, as an adjunct, involved work at another facility in Fort Dodge, Iowa. The amount of the contract was $3,413,800. It appears that the majority of the work performed by Preston was actually performed at Preston's facility in Kansas City. In April 2002, Cold Storage indicated to Preston that the Crete Project would be delayed. Work by Preston on the Crete Project as well as a project in Fort Dodge was stopped for 6 weeks, and work on the Crete Project did not recommence in a substantial way. In January and February 2003, Preston performed some additional work under the general outlines of the contract, which work Preston described as necessary to maintain and preserve the materials being held by Preston at its home office and to protect them from natural deterioration. While Preston did not specifically invoice Cold Storage for this work, its charge therefor was $1,884.80.
Preston's last invoice to Cold Storage was dated August 15, 2002, in the amount of $321,948. On March 7, 2003, Preston filed a construction lien with the register of deeds of Saline County in that amount under Neb.Rev.Stat. § 52-147 (Reissue 2004). Thereafter, in October 2003, Cold Storage substituted collateral for the construction lien, in the form of a cashier's check in the amount of $370,300 deposited with the clerk of the district court for Saline County.

PROCEDURAL HISTORY
Although the transcript in this case contains over 400 pages, including several amendments to the complaint, discovery documents, pretrial filings, and court orders, extensive recitation of the procedural history is not necessary for several reasons. The primary reason is that the case ultimately came on for a bench trial before the district court upon Cold Storage's general denial without any affirmative defenses. The primary issue raised by Cold Storage was whether the lawsuit for foreclosure of a construction lien could also include a cause of action for additional damages for breach of contract. The trial court rejected Cold Storage's claim that the action was limited solely to the foreclosure of the lien. The matter was tried on June 26, 2006, and on December 27, a decision was rendered by the district court which gave judgment to Preston on its lien for $321,948, as well as $1,884.88 "for work performed under the contract but not invoiced to [Cold Storage] for maintenance of the compressors," for a total judgment of $323,832.88. Preston filed a timely motion for new trial and/or to alter or amend the judgment on the ground that the court had not dealt with the breach of contract damages which were claimed. The court entered its order on March 30, 2007, and amended its previous decision to add an additional $748,428 in damages for lost profits due to Cold Storage's breach of contract between the parties, for a total judgment of $1,072,260.88.
The second reason that we do not extensively discuss the procedural history, or the evidence for that matter, is the limited scope of the assignments of error advanced by Cold Storage.

ASSIGNMENTS OF ERROR
Cold Storage makes five separate assignments of error, but examination of its *786 brief reveals that such have been consolidated and argued as three claims, which are as follows: (1) The trial court did not have subject matter jurisdiction to try any common-law causes of action in this statutory action for foreclosure of a construction lien; (2) Preston did not satisfy its burden of proving that its claim was filed in time to create a lien; and (3) Preston never pled a claim for the labor charges of January and February 2003 in the amount of $1,884.88, and as a result, the trial court committed error in including such amount in its judgment.

STANDARD OF REVIEW
Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. Gage Cty. Bd. v. Nebraska Tax Equal. & Rev. Comm., 260 Neb. 750, 619 N.W.2d 451 (2000). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. Par 3, Inc. v. Livingston, 268 Neb. 636, 686 N.W.2d 369 (2004).

ANALYSIS

May Action Brought to Foreclose Construction Lien Include Cause of Action for Other Damages Arising Out of Breach of Contract?
At the outset, we note that the amount sought in conjunction with the foreclosure of Preston's construction lien  $321,948  is not disputed, except as to whether the construction lien was timely perfected. In short, Cold Storage does not contest that the amount sought was fair, reasonable, and necessary, or that the work was not performed. Likewise, Cold Storage does not dispute the amount of $748,428 awarded to Preston as lost profits for unperformed work by virtue of breach of contract by Cold Storage. Rather, Cold Storage's claim is that a breach of contract cause of action for lost profits cannot be brought in this lawsuit. That argument is premised upon Cummins Mgmt. v. Gilroy, 266 Neb. 635, 667 N.W.2d 538 (2003). In that case, to secure a note, John M. Gilroy and Cynthia H. Gilroy had delivered a trust deed to Cummins Management, L.P., encumbering property owned by the Gilroys, and after a failure of payments on the note, a trustee's sale was conducted at which Frank L. Huber submitted the high bid. The trustee delivered a deed to Huber, but the Gilroys refused to surrender the property and instead filed an action seeking to set aside the trustee's sale. Shortly thereafter, Huber filed a petition for forcible entry and detainer against the Gilroys, who demurred to such petition claiming that the court lacked subject matter jurisdiction because there was a dispute over who had title to the property. The trial court treated the demurrer as a plea in abatement and suspended the forcible entry and detainer action until determination of the action to set aside the trustee's deedwhich the trial court decided against the Gilroys. The Nebraska Supreme Court affirmed the trial court's action in refusing to set aside the trustee's sale in Gilroy v. Ryberg, 266 Neb. 617, 667 N.W.2d 544 (2003). However, after refusing to set aside the trustee's deed, the trial court reopened the forcible entry and detainer action and found for Huber's successor in interest, Cummins Management. The Gilroys appealed such decision, claiming that the trial court erred in failing to dismiss because it lacked subject matter jurisdiction and Cummins Management lacked standing to maintain the action.
The Supreme Court in Cummins Mgmt. concluded that the district court *787 had erred in failing to dismiss the action for lack of subject matter jurisdiction and that any order entered after the court determined that title was in dispute was a nullity. The Supreme Court said that for over a century, it had held that a court cannot determine a question of title in a forcible entry and detainer action if the resolution of the case would require the court to determine a title dispute, in which event it must dismiss the forcible entry and detainer action for lack of jurisdiction. The Supreme Court reasoned in Cummins Mgmt. that when a party attempts to interject a title dispute into a forcible entry and detainer action, a statutory action, thereby transforming it into an equitable action to determine title, the court is divested of jurisdiction. Citing Pence v. Uhl, 11 Neb. 320, 9 N.W. 40 (1881), the court noted the nature of forcible entry and detainer actions, saying that such have nothing to do with title because when titles are relied upon to establish the right to possess real estate, resort must be had to another tribunal but also to a different form of action. Relying upon the limited scope of forcible entry and detainer actions, the Supreme Court in Cummins Mgmt. said that when a district court hears such an action, it sits as a special statutory tribunal to summarily decide the issues authorized by the statute and not as a court of general jurisdiction with power to hear and determine other issues.
From this authority and reasoning, Cold Storage argues that a construction lien foreclosure is a statutory action under Neb.Rev.Stat. § 52-125 et seq. (Reissue 2004) and that thus, a common law action for breach of contract cannot be combined therewith. Cold Storage then cites Tilt-Up Concrete v. Star City/Federal, 261 Neb. 64, 621 N.W.2d 502 (2001) (Tilt-Up II), as precedent and illustrative of its proposition. However, both the district court in the instant action and Preston in its briefing rely upon Tilt-Up II as the authority which allows the foreclosure of the construction lien as well as a breach of contract claim in the same action.
In Tilt-Up Concrete v. Star City/Federal, 255 Neb. 138, 582 N.W.2d 604 (1998) (Tilt-Up I), Tilt-Up Concrete, Inc. (Tilt-Up), filed a petition in district court against Star City/ Federal, Inc. (Star City), seeking foreclosure of a construction lien. On appeal, the Supreme Court held that when a contractor has not substantially performed a contract, the contractor is entitled to a construction lien only for the reasonable value of the labor performed and the materials furnished. Thus, the court reduced Tilt-Up's lien by over $600,000.
Four years six months after Tilt-Up I was originally filed, Tilt-Up filed another petition in district court seeking damages for breach of an oral contract with Star City and a deficiency judgment, which case became the previously referenced Tilt-Up II. Star City's demurrer on the ground that Tilt-Up's second action was barred by the statute of limitations was sustained, and ultimately, Tilt-Up stood on its amended pleading and appealed to the Supreme Court. In the Supreme Court's analysis, it found that on its face, Tilt-Up's second action was barred by the statute of limitations. However, Tilt-Up argued that the statute of limitations was equitably tolled during the pendency of the construction lien foreclosure action because Tilt-Up was barred during that time from bringing a breach of contract action.
In reference to Tilt-Up's argument for equitable tolling, the Supreme Court in Tilt-Up II considered the effect of the Nebraska Construction Lien Act (NCLA), § 52-125 et seq., saying, "The first issue we address is whether the NCLA precludes a construction lienholder from also pursuing an action for breach of contract." 261 Neb. at 68, 621 N.W.2d at *788 507. The court said that the general rule is long established that in the absence of some provision to the contrary, the remedy upon a construction lien and the remedy upon the debt are distinct and concurrent and may be pursued "`at the same time or in succession.'" Id. In support thereof, the court cited at least 20 cases supporting that proposition from other jurisdictions. The court then held:
This rule is consistent with the well-known principle that a statutory construction which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it. See, Lackman v. Rousselle, 257 Neb. 87, 596 N.W.2d 15 (1999); Stoneman v. United Neb. Bank, 254 Neb. 477, 577 N.W.2d 271 (1998). The NCLA contains neither an express provision nor any language indicating that the NCLA was meant to preclude other remedies that a construction lienholder might pursue to collect a contractual debt. We therefore conclude that the NCLA does not take away a construction lienholder's common-law right to sue for breach of contract.
Because the NCLA does not preclude an action for breach of contract, Tilt-Up was entitled to bring such an action despite the pendency of its construction lien foreclosure action. The only limitation is that any amount recovered for breach of contract damages would be credited to satisfy the construction lien when necessary to prevent a double recovery.
261 Neb. at 68, 621 N.W.2d at 507-08. The Supreme Court therefore concluded in Tilt-Up II that because Tilt-Up was not barred from bringing its breach of contract action by the NCLA, the statute of limitations for breach of contract was not tolled for that reason and the second suit was therefore barred.
It seems clear to us, as it apparently did to the district court in the instant case, that the Supreme Court's discussion in Tilt-Up II concluding that the remedies upon a construction lien and upon a debt because of breach of contract are distinct and concurrent and may be "`pursued at the same time or in succession,'" 261 Neb. at 68, 621 N.W.2d at 507, means that when foreclosing a construction lien, a second cause of action for damages occasioned by breach of the contract can be brought in the same lawsuit. In the case before us, the construction lien represents the unpaid cost of materials and labor actually expended, except the January and February labor charge of $1,884.88, and the second cause of action for breach of contract represents the lost profits (and Cold Storage does not dispute the amount of such loss) occasioned by Cold Storage's breach of that contract.
In summary, we find that the Supreme Court's decision in Tilt-Up II determines the issue raised by Cold Storage's first assignment of error and that the trial court did not commit error in allowing Preston to proceed on its first cause of action, foreclosure of the construction lien, simultaneously with its second cause of action, lost profits for breach of contract.

Did Preston Timely Perfect Its Construction Lien?
Cold Storage's second assignment of error and argument is that Preston did not timely file its lien. Section 52-137(1) provides: "A claimant's lien does not attach and may not be enforced unless, after entering into the contract under which the lien arises and not later than one hundred twenty days after his or her final furnishing of services or materials, he or she has recorded a lien."
Cold Storage seizes upon the following language from Occidental S. & L. Ass'n v. *789 Cannon, 184 Neb. 659, 666-67, 171 N.W.2d 166, 171 (1969):
We also observe that after a contract for material or labor is substantially completed, there should be no unreasonable delay in filing a claim for a lien if one is desired, and the time for filing a lien cannot be delayed by performing minor labor or furnishing minor items of material. The purpose of the mechanic's lien statute is to protect the diligent contractor or materialman, not to provide relief for the careless or negligent one. To permit a contractor or a materialman to string out work on orders is to abort the statute. If the time which is restricted by the statute can be indefinitely extended by minor work or deliveries after a contract is substantially completed, the 4-month limitation period in which to file this class of lien can and will be utterly and completely defeated, permitting the title to property to remain in an unsettled condition, and rights of diligent claimants will be subordinated to those who carelessly or unnecessarily delay to claim their rights.
Cold Storage argues that the only items of material or labor for the Crete Project which occurred within 120 days of March 7, 2003, the date upon which Preston filed his construction lien, were charges for labor beginning January 15, 2003, in the amount of $745.88 for labor by Preston employees and contract labor charges of $1,139, which Preston asserts it performed on behalf of Cold Storage between January 15 and February 13, 2003. Preston's initial response to this argument is that it is Cold Storage's burden to question the validity of the lien or the performance of a contract in a lien foreclosure by pleading such as an affirmative defense, citing Reeves v. Watkins, 208 Neb. 804, 305 N.W.2d 815 (1981). In Reeves, the court said:
Furthermore, it was incumbent upon [the appellant] to raise the invalidity or nonperformance of the contract in the mechanic's lien foreclosure. "Objections which go to the validity or existence of the lien or the debt on which it is based may be set up in defense to an action to enforce the lien." 57 C.J.S. Mechanics' Liens § 273 (1948).
208 Neb. at 810, 305 N.W.2d at 819.
Moreover, we note that Neb. Ct. R. of Pldg. in Civ. Actions 9(c) (rev.2003) provides in part: "Conditions Precedent. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." Such rule is applicable to all "civil actions filed on or after January 1, 2003," and is clearly applicable to this action. See Neb. Ct. R. of Pldg. in Civ. Actions 1 (rev.2004).
Cold Storage does not direct us to any allegation in its pleadings that the lien sought to be foreclosed was filed later than 120 days after Preston's final furnishing of service or materials. Nor have we found any such allegation in our examination of the record. On the other hand, in accordance with the above-quoted rule 9(c), Preston alleges that within 120 days after the indebtedness accrued, it had filed a construction lien with the register of deeds for Saline County pursuant to § 52-147 in the amount of $321,948 as required by law. Cold Storage's amended answer to the second amended complaint simply admits certain allegations and "denies all of the other allegations contained in the Second Amended Complaint."
While we have found no specific authority holding that noncompliance with the 120-day requirement for the filing of a construction lien is an affirmative defense which is waived if not specifically pled, we so hold for the reasons set forth above. *790 Additionally, such conclusion is analogous to the holding of Big Crow v. City of Rushville, 266 Neb. 750, 669 N.W.2d 63 (2003), that noncompliance with Neb. Rev.Stat. § 13-906 (Reissue 1997) is an affirmative defense which must be pled. Section 13-906 prevents suit under the Political Subdivisions Tort Claims Act unless the governing body of the political subdivision has made final disposition of the claim or, if such final disposition has not been made within 6 months, the claim is withdrawn in writing from consideration of the governing body and suit is instituted. See, also, Cole v. Isherwood, 264 Neb. 985, 653 N.W.2d 821 (2002) (discussing 6-month requirement in State Tort Claims Act found in Neb.Rev.Stat. § 81-8,213 (Reissue 2003)). In short, as a general proposition, noncompliance with time limits that are preconditions to an action is an affirmative defense to be specifically pled.
As further authority for our holding, we note that the law is well established that matters which seek to avoid a valid contract are affirmative defenses. Production Credit Ass'n v. Eldin Haussermann Farms, 247 Neb. 538, 529 N.W.2d 26 (1995). Cold Storage does not claim that its contract with Preston is invalid, but, rather, seeks to avoid liability thereunder with respect to the amount sought via the construction lien by its claim that the lien was not timely filed. Such claim is an affirmative defense. For these several reasons, we hold that the failure to file a construction lien within 120 days of the last furnishing of services or materials is an affirmative defense which must be pled with particularity and that the failure to do so waives such defense. Because Cold Storage failed to do so, it has waived any such defense and this assignment of error is without merit. See Big Crow, supra (issue of noncompliance with § 13-906 was waived as defense by not affirmatively alleging such in answer).

Can Preston Recover for Labor Charges in January and February 2003 in Amount of $1,884.88?
Cold Storage argues that Preston made no claim for its January and February 2003 labor charges in the amount of $1,884.88, shown on the last page of exhibit 19, because it did not plead such specifically as an element of damage.
The trial court awarded damages of $321,948 "for the work performed and billed" to Cold Storage and "$1,884.88 for work performed under the contract but not invoiced to [Cold Storage] for maintenance of the compressors." As earlier recited, as a result of Preston's motion for new trial and/or to alter or amend judgment, the trial court amended its judgment to include $748,428 "in lost profits on unperformed future work." Thus, the trial court's total judgment was $1,072,260.88, which includes the $1,884.88 at issue in this assignment of error. Cold Storage does not contend that the work for such sum was not performed, but only that it was not invoiced to Cold Storage, nor was it specifically pled as an item of damage.
Preston's response is multifaceted. Initially, Preston argues that because an appellate court will not consider an issue on appeal that was not presented or passed on by the trial court, citing Maxwell v. Montey, 262 Neb. 160, 631 N.W.2d 455 (2001), we should not even consider this assignment of error, as the issue was not raised before the trial court. Next, Preston argues that no objection was made to the offer of exhibit 19, in which such charges were included, which is correct, and that in any event, Preston is entitled to that amount of damages which will compensate it for the loss which fulfillment of the contract would have prevented or the breach of it has entailed, citing Third Party Software v. Tesar Meats, 226 Neb. 628, 414 N.W.2d 244 (1987). Finally, Preston *791 argues that the amount of damages to be awarded is a matter for the fact finder which will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved, citing Union Ins. Co. v. Bailey, 234 Neb. 257, 450 N.W.2d 661 (1990).
Cold Storage has not cited us to any place in the trial record where it either objected to the specific charges for January and February 2003 put into evidence by way of exhibit 19 or introduced evidence that such charges were not fair, reasonable, and necessary. Accordingly, we conclude that this issue was not properly raised in the trial court and preserved for appellate review. Moreover, the amounts sought for labor in January and February 2003 were within the cause of action for breach of contract, although such amount was not included in the amount of the construction lien. However, the failure to include such in the construction lien does not mean that the amount is not recoverable, assuming proper proof, and there is no assertion made that Preston did not prove such sum. The trial court's award of such damages is not clearly wrong. For these reasons, we find the assignment of error to be without merit.

CONCLUSION
Finding no merit to any of the assignments of error advanced by Cold Storage, we affirm the trial court's judgment against Cold Storage and in favor of Preston in the amount of $1,072,260.88.
AFFIRMED.