JAYNE STEELE, SUCCESSOR PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES E. STEELE II, DECEASED, APPELLANT, V. RITA C. SEDLACEK, PERSONAL REPRESENTATIVE OF THE ESTATE OF LISA M. SEDLACEK, DECEASED, APPELLEE.

626 N.W. 2d 224

Filed May 18, 2001.   No. S-99-760.

Vincent Valentino and Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellant.

Michael F. Coyle and Andrea Friedlander Scioli, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

Wright, J.

## NATURE OF CASE

Charles E. Steele II and Lisa M. Sedlacek were killed in a one-car accident near Rapid City, South Dakota. Charles' estate filed a wrongful death action under South Dakota law in the district court for Douglas County, Nebraska. A jury returned a verdict for Lisa's estate, and Charles' estate appealed. The Nebraska Court of Appeals affirmed. See *Steele v. Sedlacek*, No. A-99-760, 2000 WL 1207150 (Neb. App. Aug. 22, 2000) (not designated for permanent publication). We granted a petition for further review filed by Charles' estate.

## SCOPE OF REVIEW

■ When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000).

## FACTS

Between the late evening hours of September 24 and the early morning hours of September 25, 1995, Charles and Lisa were killed while traveling eastbound on U.S. Highway 44 in Lisa's 1990 Chevrolet Camaro. This stretch of two-lane highway between Deadwood and Rapid City, South Dakota, is an unlit, winding road in a mountainous and wooded area. On a curve in the highway, the Camaro left the road, traveled approximately 30 feet, and struck a tree. There were no eyewitnesses to the accident.

On March 28, 1996, Charles' estate filed a wrongful death action under South Dakota law against Lisa's estate. The petition alleged that Lisa was negligent in failing to keep her vehicle under reasonable control, in operating her vehicle at a speed greater than was reasonable, in failing to keep a proper lookout, and in operating her vehicle in such a manner that the vehicle could not stop or turn aside without colliding with an object or obstruction. Lisa's estate alleged that Charles was negligent,

contributorily negligent, and assumed the risk by continuing to occupy an automobile with someone that he knew or should have known was so intoxicated as to be impaired.

At trial, Charles' estate introduced the deposition testimony of Lisa's personal representative, Rita C. Sedlacek. Portions of this deposition were read into the record and established that Lisa owned the Camaro involved in the accident.

South Dakota State Trooper Jeff Twite testified via video deposition that he had investigated the accident. Twite stated that the area in which the accident occurred consisted of many curves winding up through the hills. Twite noted that although the highway was not lit, there were reflective markers along it.

Twite determined that the Camaro was heading east, approaching a left curve, when it left the highway and struck a tree. At impact, the vehicle was torn into two pieces. Charles' body was found lying on the ground on the passenger's side of the Camaro. Part of his left leg was pinned inside the vehicle on the passenger's side. Lisa was also thrown from the vehicle, and her body was found 49 feet from the wreckage.

Twite opined that skid marks near the scene of the accident indicated that the Camaro's brakes had been applied just before the vehicle reached the curve, which caused the Camaro to slide sideways. Twite stated that the speed limit through the entire distance of the hills was 50 m.p.h., and he estimated that the Camaro was traveling at a minimum of 65 m.p.h. Twite opined that Lisa was driving the vehicle and that the curve in the highway could have been negotiated if the vehicle had been under control and a proper lookout had been maintained.

Former South Dakota State Trooper Russell Sprague testified that he assisted Twite in the accident investigation. Sprague stated that the Camaro had slid into a large pine tree, colliding near the firewall on the passenger's side. The vehicle split at the firewall and wrapped itself around the tree.

Sprague opined that the Camaro was traveling at least 65 m.p.h. when it left the highway and that Lisa was driving when the accident occurred. Sprague concluded that the tire marks on the highway were not caused by braking. According to Sprague, if Lisa had been applying the brakes, a solid black mark would have been created rather than the striated type found at the

scene. He opined that the tire marks were caused by the vehicle's sliding sideways as it was trying to negotiate the left curve. Sprague was able to trace the striated marks all the way until they reached the shoulder of the highway, off the shoulder into the gravel, and up to the point where the vehicle impacted the tree. He stated that a warning sign indicating a curve ahead and recommending a speed of 45 m.p.h. was located approximately 150 yards from the curve where the accident occurred.

Over the objection of counsel for Charles' estate, counsel for Lisa's estate read the cross-examination of Twite into the record, which included testimony regarding the blood-alcohol levels of both Charles and Lisa. At the close of its case, Charles' estate renewed its request that testimony regarding the blood-alcohol levels be stricken from the record. The trial court granted the request and ordered the jury to disregard this evidence on the basis that it was not relevant, was highly prejudicial, and lacked foundation.

Lisa's estate then presented its case. The evidence offered included deposition testimony by a member of the Pennington County, South Dakota, sheriff's office and by Lisa's personal representative.

At the close of all the evidence, both parties moved for directed verdicts on liability, which motions were overruled. The trial court then submitted the issue of negligence to the jury, and the jury returned a verdict for Lisa's estate. Charles' estate subsequently moved for a judgment notwithstanding the verdict. Fifteen days later, Charles' estate filed South Dakota statutes with the trial court and requested that the court take judicial notice of these statutes. In refusing to take such notice, the trial court stated:

> For the first time ever in this case, following a full trial and an adverse jury verdict, the Plaintiff now raises the issue of negligence per se. The Plaintiff did not plead negligence per se, nor offer the relevant South Dakota statutes and jury instructions at trial, nor object on this basis to the jury instructions that were given at trial.

The trial court concluded that the attempt to inject this issue into the case came too late and overruled the motion for judgment notwithstanding the verdict.

Charles' estate appealed to the Court of Appeals, which affirmed. We granted the petition of Charles' estate for further review.

## ASSIGNMENTS OF ERROR

Charles' estate assigns as error that the Court of Appeals erred in failing to hold (1) that it was entitled to judgment as a matter of law; (2) that the substantive law of South Dakota applied and, pursuant to such law, Lisa was negligent per se; and (3) that the trial court committed prejudicial error by the admission of certain evidence.

## ANALYSIS

Charles' estate argues that the Court of Appeals erred in failing to hold that it was entitled to judgment as a matter of law. The Court of Appeals concluded that the question of Lisa's negligence was a question of fact for the jury.

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000). We therefore review the evidence to determine whether reasonable minds could differ as to whether Lisa was negligent and whether her negligence was the proximate cause of the accident.

There were no eyewitnesses to this accident. The evidence regarding the accident was testified to by two South Dakota state troopers who investigated the accident scene. Each of these troopers opined that Lisa was the driver of the vehicle. The opinion of the troopers was based upon the physical evidence at the scene. The main factor was the position of Charles' body in relation to the passenger's side of the vehicle. A portion of Charles' left leg was pinned in the passenger's side after the accident.

It was undisputed that the speed limit on this particular stretch of highway was 50 m.p.h. A curve sign recommending a speed of 45 m.p.h. stood 150 yards from the curve where the accident occurred. Both troopers were of the opinion that Lisa's vehicle

left the highway at a minimum of 65 m.p.h. Twite opined that skid marks located at the point where the vehicle left the highway were made by the driver attempting to brake the vehicle. Sprague stated that the striation of the black marks indicated that the tires were still rotating as the vehicle was sliding sideways. According to Sprague, if the brakes had been applied, a solid black mark would have been left rather than the striated type that Sprague observed. The vehicle struck a tree approximately 30 feet from the edge of the highway with such force that the vehicle was cut in half at the firewall. Lisa's body was found 49 feet from the wreckage. The impact severed part of Charles' left leg.

We conclude that reasonable minds could not differ and could draw but one conclusion—the cause of the accident was Lisa's failing to maintain a proper lookout, failing to maintain proper control of her vehicle, and driving at an excessive speed for the conditions then and there existing. The two-lane highway is an unlit, winding road in a mountainous and wooded area. Lisa may have applied the brakes as the vehicle left the highway, or the tires may have been rotating as the vehicle slid sideways to the point of impact. Neither scenario creates a favorable inference for Lisa.

A directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence. See *McLain v. Ortmeier, supra.* Here, reasonable minds could draw but one conclusion—that Lisa, while driving at a minimum of 65 m.p.h., was unable to keep her vehicle on the highway as it approached a left curve with a recommended speed of 45 m.p.h. and that, as a result, the vehicle left the highway and struck a tree with such impact that the vehicle was torn in two and both occupants were killed. The party against whom a verdict is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. See *McLain v. Ortmeier, supra.* There are no inferences deducible from the relevant evidence that would prevent a judgment of liability. The facts are such that reasonable minds could draw but one conclusion—Lisa was negligent, and her negligence was the proximate cause of the death of the parties. Therefore, the trial court erred in failing to sustain the motion for directed verdict by Charles' estate on the issue of liability, and the Court of Appeals erred in affirming the decision of the trial court.

Because we reverse the decision of the Court of Appeals and remand the cause for a new trial, we choose not to address the other errors assigned by Charles' estate. However, we do take note of a purported cross-appeal by Lisa's estate.

In its supplemental brief on petition for further review, Lisa's estate purported to raise a cross-appeal in which it assigned four errors alleged to have been committed by the trial court. Lisa's estate did not file a cross-appeal with the Court of Appeals and, therefore, did not assign such errors for review by the Court of Appeals.

█ A petition for further review and supporting memorandum brief shall set forth specifically and in detail the errors alleged to have been made by the Court of Appeals. Neb. Ct. R. of Prac. 2F(3) (rev. 2000). The Nebraska Supreme Court will not consider errors which are not properly assigned in a petition for further review and discussed in the supporting memorandum brief. *Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999). Thus, Lisa's estate cannot allege errors on the part of the trial court that were not raised on appeal or addressed by the Court of Appeals.

## CONCLUSION

For the reasons set forth herein, we reverse the decision of the Court of Appeals, and we remand the cause to the Court of Appeals with directions to further remand the cause to the trial court for a new trial.

REVERSED AND REMANDED
WITH DIRECTIONS.