# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1712

_____

| | | |
|---|---|---|
| Fru-Con Construction Corporation; | * | |
| Austin Maintenance & Construction, | * | |
| Inc., a Delaware Corporation, doing | * | |
| business as Fru-Con/Austin, JV, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Controlled Air, Inc., a Kansas | * | |
| Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 26, 2008
Filed:  July 24, 2009

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Fru-Con Construction Corporation and Austin Maintenance and Construction, Inc. (the Joint Venture) appeal the district court's application of <u>Colorado River</u>[1] abstention to dismiss the Joint Venture's breach of contract action against Controlled Air, Inc.  We reverse.

_____

[1]<u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976).

## I. BACKGROUND

Nordic Biofuels of Ravenna, L.L.C., hired the Joint Venture through a real estate improvement contract as defined by Nebraska Revised Statute § 52-130 to construct an ethanol production facility in Ravenna, Nebraska. The Joint Venture engaged Controlled Air to construct the grain receiving, storage, and milling system for the facility. Their agreement contained law and forum selection clauses requiring all disputes between the parties to be governed by Missouri law and brought in Missouri state court or the federal district court for the Eastern District of Missouri. Additionally, the contract allowed the Joint Venture to terminate Controlled Air for specified reasons and to take over the work being performed after giving seventy-two hours written notice.

A dispute between Controlled Air and the Joint Venture arose and work ceased on the project. Controlled Air supplied labor and materials through January 14, 2007, and the Joint Venture assumed responsibility for the work on January 17, 2007. Pursuant to the Nebraska Construction Lien Act (NCLA), Controlled Air recorded a construction lien on March 1, 2007, for purportedly unpaid labor and materials. The recording alleged that the Joint Venture owed Controlled Air $1,496,636 for labor and materials provided through January 14. Controlled Air filed suit to foreclose the construction lien in the District Court of Buffalo County, Nebraska, on May 18, 2007. The Joint Venture, however, had previously filed a breach of contract action against Controlled Air in the United States District Court for the Eastern District of Missouri. The complaint alleged that the Joint Venture incurred damages of $1,500,000 after January 17, 2007, as a result of Controlled Air's breach of the agreement.

Believing that its Nebraska lien foreclosure action could serve to litigate the entire dispute between the parties, Controlled Air filed a motion asking the federal court to abstain from or dismiss the Joint Venture's breach of contract claim in the Eastern District of Missouri. Believing that the federal court forum could serve the

same purpose, the Joint Venture filed a lien relief bond in Buffalo County, Nebraska, in accordance with the NCLA, releasing the construction lien and clearing the lien from the title to the real estate in question. A motion to dismiss or stay Controlled Air's lien foreclosure proceeding was then filed by the Joint Venture in the District Court of Buffalo County. Thus, a federal-state forum fight came to life.

## A. Nebraska Proceedings

The Joint Venture's motion to dismiss the lien foreclosure proceeding alleged that by filing a surety bond issued by a company authorized to do business in Nebraska, the action was no longer in rem and the forum selection clause applied, mandating jurisdiction in Missouri. During the first hearing on this matter, the Nebraska court held that the bond was ineffective because only a person having an interest in the real estate may file a bond under Nebraska Revised Statute § 52-142, and the Joint Venture did not have an interest in the lien property.[2] After the Joint Venture amended the bond, the Nebraska court again held the bond ineffective because it failed to identify where and upon whom service should be made. Finally, after the Joint Venture corrected all purported mistakes, the Nebraska court ruled on the motion to dismiss.

The Nebraska court first noted that the bond discharged the real estate lien,[3] but then concluded that the foreclosure action was still in existence "in so much as the lien is transferred to the submitted surety bond." On this basis, the court held that the

---

[2]This was error. Pursuant to Nebraska Revised Statute § 52-131(1), any person (including the Joint Venture, a prime contractor as defined in Nebraska Revised Statute § 52-127(8)), "'who furnishes services or materials pursuant to a real estate improvement contract has a construction lien[,]'" to secure the payment of his or her contract price. Tilt-Up Concrete, Inc. v. Star City/Fed., Inc., 582 N.W.2d 604, 610 (Neb. 1998) (quoting Neb. Rev. Stat. § 52-131(1)).

[3]This was a correct analysis.

validity of the original construction lien and the amounts that might be owed on it were still in question. Thus, the court decided that an appropriate remedy was not available in the federal forum and denied the motion to dismiss.

Although the contract action had not been asserted in Nebraska, the state court, in making its ruling, applied Nebraska Revised Statute § 25-415 to dispose of the contract's forum selection clause. That section codifies Nebraska's recognition of forum selection clauses, but provides five exceptions. While the court originally viewed three of the exceptions as potentially applicable, it ultimately determined that the Joint Venture's bond was ineffective in releasing the lien from the real estate, creating an in rem action that had to be resolved at the situs of the dispute–Nebraska. However, as earlier stated, the Nebraska court later recognized its error as to the efficacy of the bond in releasing the real estate lien and thereafter, upon reconsideration, made its dismissal decision based upon the purported "unique[ness of the lien action] to the Nebraska jurisdiction"–making a remedy not available in the federal forum. As mentioned below, the federal district court found this to be error, a matter with which we agree and discuss in greater detail in Section IIA.

## B.    Federal Proceedings

The District Court for the Eastern District of Missouri recognized its subject matter jurisdiction but granted Controlled Air's motion to abstain from and dismiss the Joint Venture's breach of contract action, but only after the Nebraska court retained jurisdiction over the lien foreclosure proceeding.[4] The Joint Venture disputed Controlled Air's motion to abstain in the federal case on grounds that the construction lien property was no longer under the exclusive control of the Nebraska court and

---

[4]Controlled Air's motion to dismiss for lack of personal jurisdiction and improper venue was denied. As Controlled Air did not appeal that ruling it is not before us today.

-4-

because the forum selection clause mandated that jurisdiction over its contract action was properly in the federal court.

Clearly believing that the federal contract action and the state lien foreclosure proceeding were parallel matters[5]–unaware of the fact that the Joint Venture, under protest and out of an abundance of caution, had later asserted its contract action against Controlled Air in the Nebraska court, Controlled Air, Inc. v. Abengoa Bioenergy of Neb., LLC, No. CI07319 (D. Ct. Buffalo County, Neb. Oct. 22, 2007) (answer and counterclaim)–the federal district court first referenced the six abstention factors created by Colorado River and then proceeded to discuss each in turn. The court found that the following factors favored abstention: (1) while the Nebraska action is not in rem and the state court does not have exclusive jurisdiction, the state court has an interest in adjudicating the contract dispute; (2) allowing the federal action to continue would result in piecemeal litigation; (3) the Nebraska court is a more convenient forum; (4) state law controls; and (5) the state court can adequately protect the Joint Venture's rights. The sixth and final factor regarding priority of filing (of the federal contract action and the state lien foreclosure action) was held neutral. Then, the district court abstained from and dismissed the federal case.

Turning to the forum selection clause, which it separately considered, the district court concluded that "any questions of forum were validly decided by the Nebraska court." The district court concluded that abstention was a question for it to decide while enforcement of the forum selection clause was a question best left "to the

---

[5]The federal district court in formulating its abstention and dismissal order states, for instance, "both the contract dispute before this Court, and the collection actions in the Nebraska court, involve work performed by the respective parties on the ethanol plan located in Nebraska. This factor, although it does not mandate abstention, weighs in favor of abstention." Appellants' App. at 125-26. "There is currently pending before the Nebraska state court an action involving the same Parties and the same property at issue in the suit before this Court." Id. at 128.

-5-

sound judgment of the Nebraska state court." The Joint Venture filed a timely appeal alleging that the district court improperly abstained and dismissed.

## II.    DISCUSSION

Because the availability of a federal forum for the lien foreclosure claim has been an issue in both the <u>Colorado River</u> abstention ruling and the enforceability of the forum selection clause, we discuss that matter at the outset.

### A.    Lien Foreclosure Jurisdiction

Nebraska jurisdiction over the lien dispute is "unique" only in the sense that the Nebraska statute, here the NCLA, governs the nature and amount of damages the lien claimant may recover in its construction lien dispute, nothing more. Of course, federal courts routinely interpret and apply state law. Frequently, as in this appeal, statutes from more than one state are in play in a single piece of litigation.

The NCLA does not specify the forum or procedure that must be used to determine rights and remedies under the legislation. Neb. Rev. Stat. § 52-155. A court may use any procedure applicable to a realization on judgments to satisfy a NCLA-based claim. <u>Tilt-Up Concrete, Inc. v. Star City/Fed., Inc.</u>, 621 N.W.2d 502, 509 (Neb. 2001). And, any action is grounded in equity. <u>Tilt-Up Concrete, Inc. v. Star City/Fed., Inc.</u>, 582 N.W.2d 604, 610 (Neb. 1998). It is reviewed on appeal de novo on the record. <u>Id.</u> Nothing in the statute limits an NCLA action to Nebraska courts and it has already been correctly determined by the federal judge that the United States District Court for the Eastern District of Missouri would have subject matter jurisdiction over the lien dispute as well as personal jurisdiction over the parties and proper venue. <u>See</u> n.4.

-6-

Under the NCLA, "[a]ny person having an interest in real estate may release the real estate from liens . . . by [d]epositing in the office of the clerk of the [appropriate Nebraska] district court . . . a surety bond." Neb. Rev. Stat. § 52-142(1)(a). Upon the deposit of a bond, "the claimant's rights are transferred from the real estate to [that] bond and the claimant may establish his or her claim under the [Act]."[6] Id. § 52-142(3). Upon determination of the validity and amount of a lien claim, the court shall render judgment against the surety company. Id. Thus, whether Controlled Air files a foreclosure suit in Nebraska or Missouri, only the amount of a claim against the bonding company is dictated by the NCLA. Recovery under the bond first requires proof that a "real estate improvement contract" has actually been entered into. Id. § 52-131(1). In this case, the question of whether such a contract exists between the Joint Venture and Controlled Air is answered by Missouri law–the law selected under their agreement. And even if the applicable law is governed by Nebraska statute, the federal court can make that determination. So, once it is established that a valid real

---

[6]Under the NCLA, a contract vendor such as Controlled Air "is entitled to the unpaid part of his or her contract price [] when the [vendor] has substantially performed the contract," which includes profits incorporated into the contract. Tilt-up Concrete, 582 N.W.2d at 614. When a vendor has not substantially performed the contract or has been prevented from completing work, however, it is only "entitled to a lien for the reasonable value of the labor he or she has performed and the material he or she has furnished, [] the [vendor] cannot have a lien for the damages sustained from the breach of contract." Id. Yet, the Nebraska Supreme Court noted that "[a] contractor is entitled to a reasonable profit on the work performed that is secured by a construction lien, even though the profit is limited to the extent that it may be considered compensation for services actually rendered, as distinguished from the amount of the contractor's loss because of an owner's breach of contract." Id. at 615. Thus, Controlled Air is limited in damages to the reasonable value of labor and materials provided because Controlled Air claims it was prevented from completing work on the project. And, to be sure, Controlled Air asked for only "[t]he amount unpaid [] for the services and materials furnished." Controlled Air may, however, file a separate action for breach of contract for the lost profits on the contract. See Tilt-Up Concrete, 621 N.W.2d at 507-09. So far as the record shows, Controlled Air has not done so in either Nebraska or Missouri courts.

estate improvement contract exists and that the Joint Venture breached that contract by receiving and failing to pay for labor and materials provided by Controlled Air, recovery under the bond is had through a judgment against the surety company. Id. § 52-142(3).

In the event that such a judgment is rendered by the federal district court for the Eastern District of Missouri, it may be transferred, if necessary, to the District Court of Buffalo County, Nebraska, through the Uniform Enforcement of Foreign Judgments Act long ago enacted in Nebraska. See id. §§ 25-1587.01 to 1587.09. It is likely, however, that any bonding company authorized to do business in Nebraska is also directly subject to service of process in the federal courts of Missouri.

## B.     Federal Court Jurisdiction

### 1. Abstention

We review a district court's decision to abstain from exercising jurisdiction over the federal court contract action under Colorado River for an abuse of discretion. Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006). Federal courts, however, have a "virtually unflagging obligation . . . to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter." Id. (internal citations omitted). Thus, a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976).[7]

---

[7]When a federal court moves beyond abstention to dismissal, as here, considerably weightier reasons have to be in place. Colorado River, 424 U.S. at 818.

Six non-exhaustive factors have been developed to determine whether, in the case of parallel state and federal proceedings, exceptional circumstances warrant abstention. These six factors are:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority–not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Mountain Pure, 439 F.3d at 926. In this case, the district court abstained based on five of the six factors and dismissed the case without further comment. On appeal, the parties' focus on the district court's analysis of these six factors and, separately, the viability of the forum selection clause. Because the federal district court compared only the federal contract action and the state lien foreclosure action, clearly non-parallel proceedings, the Colorado River doctrine did not provide a basis for its judgment. Thus, we actually need not consider whether the district court properly weighed the above factors. Nonetheless, for a reason we later note, we carefully analyze the application of these components by the federal district court in Section IIB2.

### a. Parallel Proceedings

As a threshold matter, as above indicated, there must be pending parallel state and federal court proceedings before Colorado River is implicated. In re Burns & Wilcox, Ltd., 54 F.3d 475, 477 (8th Cir. 1995) (citing Baskin v. Bath Twp. Bd. of Zoning Appeals, 15 F.3d 569, 571-72 (6th Cir. 1994)), limited on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 710-11 (1996)). Precedent

establishing a comprehensive definition of "parallel proceedings" for purposes of Colorado River abstention is scarce in this circuit. Although the court has decided several cases involving such proceedings, none has discussed the specific elements of parallelism. Other circuits have, however, defined it for purposes of Colorado River. Great Am. Ins. Co. v. Gross, 468 F.3d 199, 209 (4th Cir. 2006); Tyrer v. City of South Beloit, 456 F.3d 744, 752 (7th Cir. 2006); Ambrosia Coal & Const. Co. v. Pages Morales, 368 F.3d 1320, 1330 (11th Cir. 2004); United States v. City of Las Cruces, 289 F.3d 1170, 1182 (10th Cir. 2002). The prevailing view is that state and federal proceedings are parallel for purposes of Colorado River abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court. This circuit requires more precision.

The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient. Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coop., Inc., 48 F.3d 294, 297 (8th Cir. 1995). Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005). This analysis focuses on matters as they currently exist, not as they could be modified. Baskin, 15 F.3d at 572. Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings. AAR Int'l, Inc. v. Nimelias Enter. S.A., 250 F.3d 510, 520 (7th Cir. 2001).

With these principles in mind, we start with a specific finding that Controlled Air's lien foreclosure proceeding is not parallel to the Joint Venture's breach of contract action for purposes of Colorado River abstention. Controlled Air is seeking to foreclose a Nebraska statutory lien for labor and materials furnished on and before January 14, 2007. The Joint Venture, however, seeks common law contract damages

for losses incurred after January 17, 2007, as a result of Controlled Air's breach of the subcontract. While both actions stem from the same project and contractual relationship, each is premised on a different wrong arising from different occurrences. Upon completion of the lien foreclosure, the only issue decided will have been whether labor and materials were provided for which the Joint Venture has failed to pay. A decision on that claim, which has been asserted only in state court, will not foreclose the issue of whether Controlled Air breached the subcontract and whether the Joint Venture incurred damages as a result. Accordingly, the state lien foreclosure action will not dispose of all issues in the federal contract action. See, e.g., George Weis Co. v. Stratum Design-Build, Inc., 227 S.W.3d 486, 489-90 (Mo. 2007) (holding a lien is a claim against property–here a surety bond–and breach of contract is a claim against a person; thus, the lien proceeding did not dispose of the breach of contract action). Neither will any judgment rendered in the lien foreclosure action be res judicata in the contract dispute.

The sources of law, required evidentiary showings, measures of damages, and treatment on appeal are also distinct for each claim. The lien amount is, at least in part, based on Nebraska statute and is limited by the NCLA. The breach of contract claim, on the other hand, is based on Missouri common law and entails the satisfaction of five different elements. Berra v. Papin Builders, Inc., 706 S.W.2d 70, 73-74 (Mo. Ct. App. 1986) (outlining the five breach of contract elements). The difference in recoveries for these claims was highlighted in Preston Refrigeration Co. v. Omaha Cold Storage Terminals, where the court said a lien is "the unpaid cost of materials and labor actually expended," while a breach of contract action concerns the damages incurred as a result of incomplete performance. 742 N.W.2d 782, 788 (Neb. Ct. App. 2007); see also Info. Sys. & Networks Corp. v. City of Kansas City, 147 F.3d 711, 713 (8th Cir. 1998) (addressing breach of contract damages). Finally, a lien foreclosure is grounded in equity, tried to the court and on appeal is reviewed de novo on the record, while the breach of contract claim is an action at law which may be presented to a jury and is factually reviewed for clear error. Par 3, Inc. v. Livingston,

686 N.W.2d 369, 372 (Neb. 2004); Lincoln Lumber Co. v. Lancaster, 618 N.W.2d 676, 679 (Neb. 2000); C.F.S. v. Mahan, 934 S.W.2d 615, 618 (Mo. Ct. App. 1996); Old v. Heibel, 178 S.W.2d 351, 352 (Mo. 1944).

Almost identical facts were addressed by the Fourth Circuit in Gannett Co., Inc. v. Clark Construction Group, Inc., 286 F.3d 737 (4th Cir. 2002). Gannett hired Clark to build a new USA Today headquarters, a dispute arose, and work ceased. Id. at 740. Gannett filed a federal action for breach of contract and Clark filed a lien foreclosure action in Virginia state court. Id. Clark subsequently filed a motion to dismiss or stay the federal proceedings pending the outcome of the state action, and Gannett filed a motion to abate or stay the state proceedings. Id. The federal district court granted Clark's motion to stay the proceedings pursuant to the Colorado River abstention doctrine. Id. at 740-41.

The Fourth Circuit reversed, holding that the state lien proceeding and the federal breach of contract action were not parallel. Id. at 741-43. The court found the federal contract action and the state lien action involved different issues with different requisites of proof. Id. at 742. Further, the remedies were different as the state lien action sought foreclosure on property (here, the bond proceeds) and the federal contract action sought compensatory damages. Id. at 743. Thus, the federal contract action and the state lien action were not parallel proceedings and Colorado River abstention did not apply. Id.; see also New Beckley Mining Corp. v. UMW, 946 F.2d 1072, 1074 (4th Cir. 1991) (holding state and federal actions not parallel for Colorado River purposes because the remedies were different—one was equitable and the other compensatory—and the sources of law came from different states).

In sum, the state lien foreclosure proceeding will not dispose of the federal contract action and the sources of law, remedies sought, elements of proof, review on appeal, and events giving rise to each cause of action are different. Additionally, Controlled Air has never asserted the lien foreclosure claim in the federal district

court. So, as to the lien foreclosure, there is neither similar claims nor similar parties in both state and federal courts as required for parallelism. Thus, Colorado River was not available to the federal court in adjudication of the correct locus of the contract action.

### b. Similar Claims

The foregoing analysis does not end our inquiry. When the Nebraska court denied the Joint Venture's motion to dismiss the lien claim, the Joint Venture answered Controlled Air's lien foreclosure action in the Nebraska court. At that same time, to protect its contract interests in the face of Controlled Air's federal motion to dismiss, the Joint Venture, while refusing to acknowledge the correctness of Nebraska venue, asserted its breach of contract action in state court, but "only out of an abundance of caution." Controlled Air, No. CI07319, answer and counterclaim at 2. So, at that point in time, the contract action asserted by the Joint Venture against Controlled Air was, ostensibly, pending in both the Nebraska court and the federal district court for the Eastern District of Missouri.[8]

---

[8]Unfortunately for Controlled Air, this turn of events is not advantageous to its abstention and dismissal contentions. As already stated, there is nothing in the district court record concerning the breach of contract counterclaim. Further, upon questioning by this court, Controlled Air conceded that the counterclaim was "not filed with the court." Neither was the counterclaim ever mentioned in the briefings to this court. These facts alone foreclose any newly minted argument that the Nebraska and federal contract actions are parallel for purposes of our consideration of the issues in this appeal. See City of Jefferson City v. Cingular Wireless, LLC, 531 F.3d 595 (8th Cir.), cert. denied sub nom. Alltel Commc'ns, LLC v. City of Springfield, 129 S. Ct. 739 (2008). In Jefferson City, the failure to notify the district court of an alleged parallel proceeding, and, thus, limiting the court's ability to exercise its discretion regarding the matter, was held to preclude this court from considering the alleged parallel proceeding on appeal for abstention purposes. Id. at 604-05. In Jefferson City, the appellant appealed the denial of a motion to abstain citing a state court case as a parallel proceeding. Id. We affirmed noting that

This event, however, did not trigger parallelism between the proceedings pending in the two courts.  The principle cases in this circuit defining when actions become parallel for abstention purposes are Scottsdale Insurance Co. v. Detco Industries, Inc., 426 F.3d 994 (8th Cir. 2005), and Royal Indemnity Co. v. Apex Oil Co. Inc., 511 F.3d 788 (8th Cir. 2008).  As opposed to Colorado River abstention, these cases concern the so-called Wilton/Brillhart abstention doctrine, Wilton v. Seven Falls Co., 515 U.S. 277 (1995); Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942), a doctrine granting broader discretion to abstain but continuing to require federal-state parallelism.  Scottsdale counsels that the "threshold issue . . . is whether parallel proceedings were pending in state court at the time [the federal plaintiff] brought its [federal] action."  426 F.3d at 996.  In this case, such rule defeats a parallelistic outcome because the Joint Venture's federal action was filed well before Controlled Air's Nebraska lien foreclosure claim and much longer before the Joint Venture's Nebraska breach of contract assertion.  While Royal Indemnity might be read to provide a different result based strictly upon a filing time, it otherwise demands that "the state court proceeding must present [to the federal court] 'the same issues, *not governed by federal law*, between the same parties.'"  511 F.3d at 796 (emphasis added) (quoting Brillhart, 316 U.S. at 495).  Such a circumstance did not exist in this case at the time the federal court abstained from and dismissed the Joint Venture's contract action.  Notwithstanding the federal court's erroneous conclusion that adjudication of the forum selection clause be best left "to the sound judgment of the Nebraska state court," enforcement, or not, of the contractual forum selection clause was a federal court procedural matter governed by federal law.  Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006); Rainforest Café, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003); Int'l Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 114-15 (5th Cir. 1996); Jones v. Weibrecht, 901 F.2d

---

appellant "has not indicated where in the record it made the district court aware of this case." Id. at 605. Thus, because the district court was unable to exercise its discretion, and this court on appeal is not a court of first view, the alleged parallel proceeding was ignored on appeal. Id.

-14-

17, 19 (2d Cir. 1990); <u>Manetti-Farrow, Inc. v. Gucci Amer., Inc.</u>, 858 F.2d 509, 513 (9th Cir. 1988); <u>Stewart Org., Inc. v . Ricoh Corp.</u>, 810 F.2d 1066, 1068 (11th Cir. 1987) (en banc) (per curiam), <u>aff'd on other grounds</u>, 487 U.S. 22 (1988); <u>Vessel Systems, Inc. v. Sambucks, LLC</u>, No. 05-DF-1028-LLR, 2007 WL 715773 (N.D. Iowa Mar. 6, 2007).  So, even as asserted in both jurisdictions, the Joint Venture's contract claim presents a federal law forum selection issue, at least in the federal court. This, of course, defeats parallelism under <u>Royal Indemnity</u> precedent.

## 2. **<u>Colorado River</u> Abstention**

Assuming, for discussion, that assertion of purportedly parallel common law contract claims occurred in both forums, we must assess the federal district court's findings for conformance with <u>Colorado River</u>.  First, we reiterate, however, that for <u>Colorado River</u> abstention purposes, any conclusion reached by the federal court arising from comparisons of the common law contract action and the statutorily based lien foreclosure claim were wholly irrelevant under both Supreme Court and Eighth Circuit precedent.  Because of use of this improper mismatch,  there has been, to date, no reference in the record to a comparative analysis under <u>Colorado River</u> of the Nebraska forum and the federal forum by the federal district court with regard to these contract actions as they may have purportedly lately pended in both jurisdictions. With that in mind, we turn again to and analyze each of the federal court's findings as set forth in its judgment of abstention and dismissal.

**Finding One:**
While the action was not in rem and the Nebraska court does not have exclusive jurisdiction, the state court has an interest in adjudicating the contract dispute.

**Analysis:**

The in rem and exclusive jurisdiction references obviously refer to the lien foreclosure claim because the contract claim presents no such issues. While the state court may have an interest in adjudicating the late blooming contract claim, the Missouri courts have an equal or significantly greater interest in adjudicating the contract claim because the forum selection clause agreed upon by the parties specifies a Missouri court applying Missouri law. And, the enforceability of the forum selection clause by the federal district court is one of federal procedural law and not Nebraska substantive law as erroneously indicated by the federal court. Also, the federal district court has little or no discretion to ignore the Joint Venture's choice of the federal forum for the filing of its contract claim, even in the absence of a forum selection clause.

**Finding Two:**

Allowing the federal action to continue would result in piecemeal litigation.

**Analysis:**

There will be no piecemeal litigation involving the contract claim. Litigating the lien foreclosure claim, if that is the comparison being made by the federal court in this finding, will require separate, and thus piecemeal, litigation in either jurisdiction, although joinder of the separate claims may be possible under Rule 18 of the Federal Rules of Civil Procedure. Likewise, there is no certainty that the Nebraska court, even correctly applying Nebraska forum selection precedent, could or would fail to enforce the contract's Missouri forum selection clause when faced with the issue in the contract claim.

**Finding Three:**

The Nebraska court is a more convenient forum.

**Analysis:**

Given the contract agreement to apply Missouri law, the Nebraska forum is at least incrementally less convenient than the Missouri forum. And, "mere inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause." Servewell Plumbing, 439 F.3d at 790.

**Finding Four:**

State law controls.

**Analysis:**
It is likely correct that state law will apply, except, of course, to forum enforcement. Forum clause enforcement in the federal court will require application of federal law. Otherwise though, state law will apply in the federal court and in the Nebraska forum and, as to the contract claim, it will be Missouri law, not that of Nebraska. And "the presence of state law issues [in federal court] will weigh in favor of abstention only in rare circumstances." Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., Inc., 48 F.3d 294, 299 (8th Cir. 1995).

**Finding Five:**
The state court can adequately protect the Joint Venture's rights.

**Analysis:**
While it is true that the Nebraska court can adequately protect the Joint Venture's rights, it can do so no more efficiently than the federal district court. And, this factor counts for or against abstention and dismissal only where "one of the forums is *inadequate* to protect a party's rights." Gov't Employees Ins. Co. v. Simon, 917 F.2d 1144, 1149 (8th Cir. 1990) (emphasis in original) (quoting Noonan S., Inc. v. County of Volusia, 841 F.2d 380, 383 (11th Cir. 1988)). Thus, this reason is no better than an even push for each forum and certainly does not provide an "exceptional circumstance" as required by Colorado River.

**Finding Six:**
Priority of filing the cases is neutral.

**Analysis:**
It may be true that "time of filing" of the contract claim and the lien foreclosure claim could be fairly evaluated as neutral. But, when compared with the forced filing time of the contract counterclaim in state court, it is a different matter. Further, priority of filing includes a plaintiff's choice of forum. "'[T]he plaintiff's choice of forum should rarely be disturbed.'" Reid-Walen v. Hansen, 933 F.2d 1390, 1395 (8th Cir. 1991) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). "[F]ederal courts give considerable deference to a plaintiff's choice of forum." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997). Accordingly, this factor clearly favors retention

of the contract claim by the federal court, the chosen forum in which the Joint Venture first filed its contract claim.

In summary, although there has been a purported <u>Colorado River</u> analysis of non-parallel filings of the parties by the district court, the court has never undertaken a review of the contract pleadings under that case's doctrine. So, at the very least, there must be a remand to the district court for that purpose. A reading of the entire record, however, dictates that such a course is unnecessary. Under the uncontested circumstances of this case, abstention is unsupportable as a matter of law. None of the reasons advanced or that could be advanced by the federal court provide the extraordinary conditions required by <u>Colorado River</u> for a federal court to disregard its "virtually unflagging obligation . . . to exercise the jurisdiction" it is given even when there is also pending a state court action involving the same subject matter. <u>Mountain Pure</u>, 439 F.3d at 926. In analyzing the <u>Colorado River</u> factors, the district court's task was and is "to ascertain whether there exists exceptional circumstances, the clearest of justifications, that can suffice . . . to justify the surrender of [] jurisdiction." <u>Id.</u> Indeed, even though we are a court of appellate review, "not of first view," <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 718 n.7 (2005), it is more than obvious that no such circumstances or justifications exist under any acceptable analysis of any of the causes of action. Thus, abstention from and dismissal of the Joint Venture's federal contract claim was and would be an abuse of discretion and reversible error.

## III.  CONCLUSION

For the foregoing reasons, we reverse and remand to the district court for proceedings consistent with this opinion.

BYE, Circuit Judge, concurring in the result and joining the dissent in part.

I conclude the district court's decision to abstain from exercising jurisdiction under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), was an abuse of discretion. Thus, I concur in the result of the court's decision reversing the district court. I agree, however, with the dissent's view as to the Colorado River abstention doctrine applying to this dispute and with its rejection of the "originally filed" approach. I would hold that as a result of the Joint Venture's breach-of-contract counterclaim, the Nebraska lien and federal contract suits are parallel proceedings as they actually existed when the district court issued its abstention order. I would apply the Colorado River abstention doctrine as articulated by the dissent, but would hold the district court abused its discretion in declining to exercise jurisdiction.

SHEPHERD, Circuit Judge, dissenting.

Because I believe we should affirm the judgment of the district court, I respectfully dissent. This appeal presents two issues: (1) Are the Nebraska and federal actions "parallel proceedings"? (2) If so, did the district court abuse its discretion by abstaining under Colorado River? On the first issue, I disagree with Judge Beam's conclusion in Part II.B.1 of his opinion that the Nebraska and federal suits are not parallel. See ante at 8-15. On the second issue, I disagree with the majority's conclusion that the district court abused its discretion by abstaining. See id. at 15-18.

I.

The Nebraska and federal actions are "parallel proceedings." Judge Beam contends the cases are not parallel because Controlled Air's lien foreclosure suit and the Joint Venture's action for breach of contract involve different "sources of law,

-19-

remedies sought, elements of proof, review on appeal, and events giving rise to each cause of action . . . ." Ante at 12. I agree that a construction lien foreclosure action and a suit for breach of contract do not involve "substantially similar issues" and, thus, are not "parallel proceedings" for purposes of Colorado River abstention. See Gannett Co., Inc. v. Clark Constr. Group, Inc., 286 F.3d 737, 743 (4th Cir. 2002). However, on October 22, 2007, four months *before* the district court abstained, the Joint Venture filed a counterclaim in the Nebraska suit asserting the same cause of action for breach of contract that it asserted in federal court.[9] The Fourth Circuit recognized the possibility of this scenario in Gannett. Id. at 742 n.4 ("We note that . . . the equity court in the State Lien Action possesses the power to resolve the breach of contract issues, in which case the State Lien Action arguably would be parallel to the Federal Contract Action, but neither Clark nor Gannett has sought such relief in the State Lien Action."). As a result of the Joint Venture's counterclaim, the state and federal proceedings in this case involve substantially similar issues, and the state action will

---

[9]Judge Beam contends that, because "there is nothing in the district court record concerning the breach of contract counterclaim," this fact "foreclose[s] any newly minted argument that the Nebraska and federal contract actions are parallel for purposes of our consideration of the issues in this appeal." Ante at 13 n.8. However, "we may take judicial notice of proceedings in other courts that relate to matters at issue." Great Plains Trust Co. v. Union Pacific R.R. Co., 492 F.3d 986, 996 (8th Cir. 2007). Further, the Joint Venture and Controlled Air have conceded, both in the district court and on appeal, that the proceedings are parallel. See Fru-Con Constr. Corp. v. Controlled Air, Inc., No. 4:07CV00495, slip op. at 11 n.5, 12 (E.D. Mo. Feb. 26, 2008) ("[t]here is no dispute that both cases involve the same contract" and "[b]oth actions involve the same construction contract"); (Appellee's Br. 12 ("The federal and Nebraska cases clearly are parallel proceedings. [The Joint Venture] has acknowledged the cases are parallel and has not raised this as an issue before the District Court or this Court.")); Audio Recording of Oral Argument at 2:28, 10:41, 16:30, Fru-Con Constr. Corp. v. Controlled Air, Inc., No. 08-1712 (8th Cir. Sept. 26, 2008) (the Joint Venture and Controlled Air conceded that the suits are parallel and referenced the filing of the counterclaim). In light of the parties' mutual and repeated concessions, taking judicial notice of the Joint Venture's counterclaim is appropriate in this case. We should not fault the litigants for failing to introduce evidence concerning a legal issue that they have never contested.

undoubtedly dispose of the federal suit for breach of contract.[10]  Therefore, the actions are parallel.  See TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005).

Judge Beam asserts that the filing of the counterclaim for breach of contract "did not trigger parallelism between the proceedings pending in the two courts."  Ante at 14.  He asserts that we are bound by Scottsdale Insurance Co. v. Detco Industries, Inc., 426 F.3d 994 (8th Cir. 2005).  In Scottsdale, this court held that multiple state tort suits and a federal declaratory judgment action[11] were not parallel because they

---

[10]To constitute "parallel proceedings," state and federal actions need not be mirror images.  As Judge Beam acknowledges, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."  Ante at 10 (citing TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005)).  In the present case, it is virtually certain that the Nebraska action, which includes both Controlled Air's lien foreclosure claim and the Joint Venture's counterclaim for breach of contract, will fully dispose of the Joint Venture's singular breach-of-contract claim in federal court.

[11]The "exceptional circumstances" test from Colorado River does not apply to actions for declaratory judgment.  Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 789 (8th Cir. 1998); see also Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) ("Distinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*.").  Despite this distinction, the threshold question of whether parallel proceedings exist remains a necessary inquiry in declaratory judgment actions to determine the extent of the district court's discretion.  If parallel proceedings exist, we review the abstention decision under the lenient test expressed in Wilton.  Prudential Ins. Co., 140 F.3d at 788-89.  If the proceedings are not parallel, the district court still has some discretion to abstain; however, it does not have the broad discretion outlined in Wilton.  Scottsdale, 426 F.3d at 999.  Instead, we review the court's abstention decision under a more stringent six-factor test.  Id. at 998-99 (adopting the six-factor test from Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419 (4th Cir. 1998) (per curiam)).  However, we use the same test to determine whether cases are parallel in declaratory judgment and non-declaratory judgment actions.  See id. at 997 ("Suits

-21-

did not involve "substantially the same issues" and because Scottsdale was not a party to the state actions. Id. at 997. In so holding, the court characterized the issue as "whether parallel proceedings were pending in state court *at the time Scottsdale brought its [federal] declaratory judgment action*." Id. at 996 (emphasis added). Judge Beam refers to this language in arguing that we must view the proceedings in this case as they existed when the Nebraska lien suit and federal contract action were originally filed, not as they actually existed when the district court abstained. Therefore, according to this view, we cannot consider the breach-of-contract counterclaim the Joint Venture filed five months after the Nebraska suit commenced.

Contrary to this belief, Scottsdale does not mandate an "originally filed" approach. At best, the language in Scottsdale is dicta and, therefore, does not bind this panel's decision. See Passmore v. Astrue, 533 F.3d 658, 661 (8th Cir. 2008) ("[w]e need not follow dicta" (quotation omitted)); John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 550 (8th Cir. 1990) ("[w]e need not follow dicta," which is "language . . . in [an] earlier [] opinion [that] was not essential to the judgment in that case"). Unlike in the present case, the parties in Scottsdale never filed counterclaims or otherwise altered the parties or issues involved in their state and federal actions. See Scottsdale, 426 F.3d at 996-97. Because the suits were never altered, it was not essential to the Scottsdale court's judgment to determine that we must view the proceedings as they existed when originally filed, as opposed to some other point in time.

Our recent decision in Royal Indemnity Co. v. Apex Oil Co., Inc., 511 F.3d 788 (8th Cir. 2008), further proves that we do not follow an "originally filed" approach in this circuit. In Royal Indemnity, Apex Oil filed suit in state court against multiple

---

are parallel if substantially the same parties litigate substantially the same issues in different forums." (quotation omitted)). Therefore, declaratory judgment abstention cases are applicable to the present case insofar as they concern the threshold question of whether parallel proceedings exist.

insurance companies (the "state insurers") on August 5, 2005, seeking a declaration of the parties' rights and responsibilities under policies the state insurers had issued Apex Oil. Id. at 791. On March 22, 2006, Royal Indemnity brought a declaratory judgment action in federal court against Apex Oil that named several other insurance companies (the "federal insurers") and sought an adjudication of the parties' rights and obligations under policies that Royal Indemnity and the federal insurers had issued Apex Oil. Id. Two months later, on May 19, 2006, Apex Oil amended its state-court complaint to name Royal Indemnity and the federal insurers as defendants in the state lawsuit. Id. at 791-92. The district court found that the state and federal proceedings were parallel and, therefore, exercised its broad discretion to abstain in a declaratory judgment action under Wilton. Id. at 792. We agreed that the state action was parallel and affirmed the district court's decision to abstain under the broad Wilton standard. Id. at 797. Thus, in Royal Indemnity, the amended state-court complaint, filed two months after the federal lawsuit commenced and nine months after the state lawsuit commenced, made the proceedings parallel.

Under Judge Beam's approach, the Eighth Circuit panel in Royal Indemnity necessarily erred. As the state and federal suits existed when they were originally filed, Apex Oil was the only party common to both actions, which involved different insurers and different policies. Id. at 791. Because Apex Oil's state lawsuit against the state insurers would not have disposed of the federal action against Royal Indemnity and the federal insurers, the proceedings were not parallel as they existed when originally filed. See TruServ, 419 F.3d at 592. Only after Apex Oil added Royal Indemnity and the federal insurers as defendants in the state action did the proceedings become parallel because the state action would have disposed of the entire federal case. See id. Under the "originally filed" approach, because the suits were not parallel as originally filed, the district court could not have had broad discretion to abstain under Wilton; it could only have had limited discretion to abstain under Aetna. Contra Royal Indemnity, 511 F.3d at 797 ("[W]e affirm the district court's decision to apply the Wilton . . . abstention standard, and . . . we hold that the

-23-

district court did not abuse its discretion in abstaining from this lawsuit to allow the *parallel* state court action to proceed." (emphasis added)).

The fact that we clearly did not view the state and federal proceedings as they existed when originally filed was essential to our reasoning and judgment in Royal Indemnity and is binding on this panel. See Passmore, 533 F.3d at 660 (we "cannot overrule an earlier decision by another panel"). In both Royal Indemnity and the present case, the proceedings were not parallel as they existed when originally filed, but they became parallel before the district court issued its abstention order. Therefore, Judge Beam's approach in the present case impermissibly ignores our recent decision in Royal Indemnity.[12]

_____

[12]Judge Beam states that "[w]hile Royal Indemnity might be read to provide a different result based strictly upon a filing time, it otherwise demands that the state court proceeding must present [to the federal court] the same issues, *not governed by federal law*, between the same parties." Ante at 14 (quotation omitted). He further opines that "enforcement, or not, of the contractual forum selection clause was a federal court procedural matter governed by federal law" . . . [and] [t]his, of course, defeats parallelism under Royal Indemnity precedent." Id. at 14-15. In my view, such an interpretation of the cited language from Royal Indemnity would give those words unwarranted meaning. If a difference between state and federal *procedural* law governing the two actions necessarily defeats parallelism, then there will be few, if any, situations in which Colorado River abstention is permissible because all procedural matters in federal court are governed by federal law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Moreover, contrary to Judge Beam's contention, see ante at 14, Servewell Plumbing and Rainforest Café make clear that we have not yet decided whether enforcement of a contract's forum selection clause is governed by state substantive or federal procedural law, see Servewell Plumbing, 439 F.3d at 789 ("Because the enforceability of a forum selection clause concerns both the substantive law of contracts and the procedural law of venue, there is some disagreement among the circuits over whether state or federal law applies, and we have yet to adopt a definitive position on the issue. Nor must we do so here . . . ." (quotation and citations omitted)); Rainforest Café, 340 F.3d at 546 ("we indulge their suggestion that we interpret the forum selection clause under federal law" only "[b]ecause the parties have not argued that state law would result in a materially different outcome").

Moving beyond issues of *stare decisis*, the principles underlying Colorado River abstention also counsel against adopting an "originally filed" approach to determine whether state and federal actions are parallel. Those principles "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quotation omitted). Put another way, "[a]llowing the litigation to proceed simultaneously in federal and state courts is wasteful because ultimately only one of the jurisdictions will actually decide the case. Once one court renders a ruling, the other court will be obliged to halt its proceedings and give res judicata effect to the decision." Erwin Chemerinsky, Federal Jurisdiction 867 (5th ed. 2007). Thus, Colorado River asks, if the district court exercises its discretion to abstain *now*, will it conserve judicial resources and promote comprehensive disposition of the litigation *in the future*?

The presence of parallel proceedings is a prerequisite for the application of Colorado River abstention because, unless "a parallel state-court action exists, [] the [federal] district court would have nothing in favor of which to abstain." Baskin v. Bath Twp. Bd. of Zoning Appeals, 15 F.3d 569, 571 (6th Cir. 1994). Thus, the existence of parallel proceedings triggers the district court's discretion to abstain under Colorado River. Under the approach advanced by Judge Beam, to determine whether its discretion to abstain is triggered, the district court must take a snapshot of the state and federal suits as they existed when originally filed.

If, as in the present case, the parties or issues involved in the proceedings have changed since the suits were originally filed, then taking a snapshot of the proceedings as they existed in the past says nothing about whether abstention will conserve judicial resources and promote comprehensive disposition of the litigation in the future. If, as in Scottsdale, the parties and issues have never changed, then there is no difference between taking a snapshot of the proceedings as they existed in the past and taking a snapshot of the proceedings as they currently exist. The snapshots look the same, and

-25-

the answer to the parallel proceedings inquiry is the same. Therefore, in light of the principles underlying <u>Colorado River</u> abstention, it only makes sense for the district court to view the state and federal proceedings as they *currently* exist to determine whether its discretion to abstain is triggered. <u>See, e.g.</u>, <u>Baskin</u>, 15 F.3d at 572 ("The issue is whether the state court proceeding, as it *currently* exists, *is* a parallel, state-court proceeding." (quotation and alteration omitted)).

Finally, and most importantly, if state and federal proceedings are parallel as originally filed but become unparallel before the district court issues its abstention order, an "originally filed" approach would still trigger the district court's discretion to abstain solely because the actions were parallel at some point in the past. Under this approach, the district court would have discretion to abstain under <u>Colorado River</u> *even though there would no longer be a parallel action in favor of which to abstain.* Consequently, such an approach runs afoul of the <u>Colorado River</u> doctrine and should be rejected. As a result of the Joint Venture's counterclaim, the Nebraska and federal actions are "parallel proceedings" as they actually existed when the district court abstained. <u>See</u> <u>TruServ</u>, 419 F.3d at 592; <u>Gannett</u>, 286 F.3d at 742 n.4; <u>Baskin</u>, 15 F.3d at 572.

II.

Because the proceedings are parallel, we "must consider whether the district court abused its discretion in finding that 'exceptional circumstances' warranted abstention." <u>Gannett</u>, 286 F.3d at 744. Determining whether exceptional circumstances exist requires evaluating the factors outlined in <u>Colorado River</u> and <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1983).[13]

---

[13]The <u>Colorado River</u> and <u>Moses H. Cone</u> factors are: "(1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal

Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc., 48 F.3d 294, 297 (8th Cir. 1995). I believe the first and third factors weigh in favor of abstention. All other factors are neutral and, as such, are "irrelevant to the existence of exceptional circumstances." Federated Rural, 48 F.3d at 297. The district court did not abuse its discretion when it decided that this case presents the type of exceptional circumstances that warrant abstention "in order to advance the 'clear federal policy' of avoiding piecemeal adjudication." Federated Rural, 48 F.3d at 297 (quoting Moses H. Cone, 460 U.S. at 16). Therefore, the judgment of the district court should be affirmed.

Even though the majority will not affirm, outright reversal is not appropriate in this case. As Judge Beam acknowledges, "although there has been a purported Colorado River analysis of non-parallel filings of the parties by the district court, *the court has never undertaken a review of the contract pleadings under that case's doctrine. So, at the very least, there must be a remand to the district court for that purpose.*" Ante at 18 (emphasis added). For example, when Judge Beam finds that "there will be no piecemeal litigation," ante at 16, his analysis—like the district court's—is potentially flawed because he fails to consider the breach-of-contract counterclaim as part of the Nebraska action. Nonetheless, he finds that "[u]nder the uncontested circumstances of this case, abstention is unsupportable as a matter of law" and that "it is more than obvious that no such [exceptional] circumstances or justifications exist under any acceptable analysis of any of the causes of action." Id. at 18. I believe that, "at the very least," id., we should remand so the district court will have an opportunity to consider the Joint Venture's Nebraska counterclaim for breach of contract in deciding whether abstention is appropriate.

—————————————————

court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights." Federated Rural, 48 F.3d at 297 (quotation omitted).